

**TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**LAW ENFORCEMENT LIABILITY**
**COVERAGE PART DECLARATIONS**

**POLICY NO.:** ZLP-41N05221-21-PB
**ISSUE DATE:** 01/21/21

**INSURING COMPANY:**   THE CHARTER OAK FIRE INSURANCE COMPANY

**POLICY PERIOD:**   From 01/01/21   to 01/01/22   12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Law Enforcement Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

1. **COVERAGE AND LIMITS OF INSURANCE:**

| LAW ENFORCEMENT LIABILITY COVERAGE FORM | LIMITS OF INSURANCE |
|---|---|
| Aggregate Limit | $3,000,000 |
| Each Wrongful Act Limit | $1,000,000 |

2. **DEDUCTIBLE:**

   Each Wrongful Act Deductible $10,000

3. **NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

SEE IL T8 01

CC: 000 D559



**TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**PUBLIC ENTITY MANAGEMENT LIABILITY**
**COVERAGE PART DECLARATIONS**

**POLICY NO.:** ZLP-41N05221-21-PB
**ISSUE DATE:** 01/21/21

001  000 T:  02 I:  * M:  15141  41N05221  *2 C 0 0 2

### THIS COVERAGE IS PROVIDED ON A CLAIMS-MADE BASIS

**INSURING COMPANY:**   THE CHARTER OAK FIRE INSURANCE COMPANY

**POLICY PERIOD:**   From 01/01/21   to 01/01/22   12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Public Entity Management Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

**1.  COVERAGE AND LIMITS OF INSURANCE:**

| PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE FORM | LIMITS OF INSURANCE |
|---|---|
| Aggregate Limit | $3,000,000 |
| Each Wrongful Act Limit | $1,000,000 |

**2.  RETROACTIVE DATE:**   01/01/1968

**3.  DEDUCTIBLE:**

Each Wrongful Act Deductible   $10,000

**4.  NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

SEE IL T8 01





**TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

CC: 000 D559

PUBLIC ENTITY EMPLOYMENT-RELATED PRACTICES
LIABILITY COVERAGE PART DECLARATIONS

**POLICY NO.:** ZLP-41N05221-21-PB
**ISSUE DATE:** 01/21/21

# THIS COVERAGE IS PROVIDED ON A CLAIMS-MADE BASIS
# DEFENSE EXPENSES ARE PAYABLE WITHIN, AND ARE NOT IN
# ADDITION TO, THE LIMITS OF INSURANCE

**INSURING COMPANY:** THE CHARTER OAK FIRE INSURANCE COMPANY

**POLICY PERIOD:** From 01/01/21   to 01/01/22    12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Public Entity Employment-Related Practices Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

**1. COVERAGE AND LIMITS OF INSURANCE:**

| PUBLIC ENTITY EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE FORM | LIMITS OF INSURANCE |
|---|---|
| Aggregate Limit | $3,000,000 |
| Each Wrongful Employment Practice Offense Limit | $1,000,000 |

**2. RETROACTIVE DATE:** 01/01/1968

**3. DEDUCTIBLE:**

Each Wrongful Employment Practice Offense Deductible    $50,000

**4. NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

SEE IL T8 01



*2C0024IN05221    15143 * M: 02 I: 000 T: 001    001    CC: 000 D559*

# LAW ENFORCEMENT LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Common Policy Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

The words "policy period" mean the Policy Period shown in the Declarations of this Coverage Part.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions.

## SECTION I – LAW ENFORCEMENT LIABILITY COVERAGE

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal injury" to which this insurance applies. We will have the right and duty to defend the insured against any claim or "suit" seeking those damages. However, we will have no duty to defend the insured against any claim or "suit" seeking damages because of "bodily injury", "property damage" or "personal injury" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" or claim and settle any claim or "suit". But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

We will have no other obligation or liability to pay sums or perform acts or services unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "bodily injury", "property damage" and "personal injury" only if:

(1) The "bodily injury", "property damage" or "personal injury" is caused by a "wrongful act" committed by you or on your behalf while conducting "law enforcement activities or operations";

(2) The "wrongful act" is committed in the "coverage territory"; and

(3) The "bodily injury", "property damage" or "personal injury" occurs during the policy period.

c. All "bodily injury", "property damage" or "personal injury" caused by the same "wrongful act" or "related wrongful acts" will be deemed to occur when the first part of such "bodily injury", "property damage" or "personal injury" occurs.

d. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

e. Damages include the attorneys' fees of the person or organization making a claim or bringing a "suit" if such fees are awarded, or paid in a settlement, for "bodily injury", "property damage" or "personal injury" to which this insurance applies.

### 2. Exclusions

This insurance does not apply to:

a. Aircraft Or Auto

"Bodily injury", "property damage" or "personal injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or "auto" owned, operated or hired by, or rented or loaned to, any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "wrongful act" which caused the "bodily injury", "property damage" or "personal injury" involved the ownership, mainte-

nance, use or entrustment to others of any aircraft or "auto" owned, operated or hired by, or rented or loaned to, any insured.

This exclusion does not apply to:

(1) Parking an "auto" on, or on the ways next to, premises you own or rent, provided that the "auto" is not owned by, or rented or loaned to, you or the insured;

(2) "Bodily injury", "property damage" or "personal injury" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify as "mobile equipment" under the definition of "mobile equipment" if such land vehicle were not:

(i) Subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(ii) Designated as a covered auto under your automobile liability insurance; or

(b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment"; or

(3) An aircraft chartered with a pilot to any insured. This exception does not apply if:

(a) The aircraft is owned by any insured; or

(b) Any insured is using the aircraft to carry any person or property for a charge.

**h.  Asbestos**

"Bodily injury", "property damage" or "personal injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

(1) Any supervision, instructions, recommendations, warnings or advice given or which should have been

given in connection with the above; and

(2) Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

**c.  Contractual Liability**

"Bodily injury", "property damage" or "personal injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to "bodily injury", "property damage" or "personal injury" for which the insured would have liability for damages without the contract or agreement.

**d.  Criminal, Dishonest, Fraudulent Or Malicious Wrongful Acts**

"Bodily injury", "property damage" or "personal injury" arising out of any criminal, dishonest, fraudulent, or malicious "wrongful act" committed:

(1) By the insured; or

(2) With the consent or knowledge of the insured.

This exclusion does not apply to our duty to defend that insured until it has been determined and admitted in a legal proceeding that such "wrongful act" was committed:

(1) By that insured; or

(2) With the consent or knowledge of that insured.

This exclusion also does not apply to "personal injury" caused by malicious prosecution.

**e.  Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person or organization, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Property loaned to you; or

(3) Personal property in the care, custody or control of the insured.

Paragraph (3) of this exclusion does not apply to payments we make un-

der Paragraph **8.** of Supplementary Payments.

**f.  Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

  **(a)** Employment by the insured; or

  **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of "bodily injury" described in Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the injury.

**g.  Employment–Related Practices**

"Bodily injury" or "personal injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to hire that person;

  **(b)** Termination of that person's employment, "temporary worker" status, "independent contractor" status, or "volunteer worker" status; or

  **(c)** Other practice, policy, act or omission related to that person's employment, "temporary worker" status, "independent contractor" status or "volunteer worker" status, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" described in Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be held liable as an employer or in any other capacity; and

**(2)** Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the injury.

**h.  Injunctive Relief**

Any loss, cost or expense arising out of complying with any injunctive or other non-monetary relief or any agreement to provide such relief.

**i.  Injury To Volunteer Workers**

"Bodily injury" or "personal injury" to any "volunteer worker" who is injured in the conduct of "law enforcement activities or operations" within the scope of his or her duties for you.

**j.  Known Wrongful Acts**

"Bodily injury", "property damage" or "personal injury" arising out of any "wrongful act", including any part of "related wrongful acts", that any "described authorized person" knew about before the first date we or any of our affiliated insurance companies have continuously provided this or similar coverage to you.

A "described authorized person" will be deemed to know about a "wrongful act" at the earliest time when such "described authorized person":

**(1)** Reports all, or any part, of the "wrongful act" to us or any provider of other insurance;

**(2)** Receives a written or verbal demand or claim for damages because of the "wrongful act"; or

**(3)** Becomes aware by any other means that all, or any part, of the "wrongful act" has been committed.

**k.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned, operated or hired by, or rented or loaned to, any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, demolition, or stunting activity.

**l. Nuclear Energy**

"Bodily injury", "property damage" or "personal injury" arising out of the "hazardous properties" of "nuclear material".

**m. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At, on, in or from any premises, site or location which is or was at any time owned, occupied or managed by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or produced by or originating from equipment that is used to heat water for personal use by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(iii) "Bodily injury" or "property damage" arising out of the use of mace, pepper spray or tear gas;

(b) At, on, in or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) If such "pollutants" are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible;

(d) At, on, in or from any premises, site or location at, on or in which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing "law enforcement activities or operations" if the "pollutants" are brought on, in or to the premises, site or location in connection with such activities or operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on, in or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with "law enforcement activities or operations" being performed by you or on your behalf by a contractor or subcontractor;

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(iv) Bodily injury" or "property damage" arising out of the use of mace, pepper spray or tear gas; or

(e) At, on, in or from any premises, site or location at, on or in which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are or were at any time performing "law enforcement activities or operations" to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) "Personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants". However, this paragraph does not apply to the use of mace, pepper spray or tear gas; or

(3) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**n.  Professional Health Care Services**

"Bodily injury", "property damage" or "personal injury" arising out of the providing or failing to provide "professional health care services".

This exclusion does not apply to "bodily injury", "property damage" or "personal injury" arising out of:

(1) The insured's providing or failing to provide first aid;

(2) The handling or treatment of corpses by an insured who is not a coroner, medical examiner or pathologist; or

(3) The furnishing or dispensing of drugs, or medical or dental supplies or appliances, by an insured who is not a medical doctor or nurse.

**o.  Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim we are investigating, any claim or "suit" we settle or any claim or "suit" against an insured we are defending:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We will not be the principal under these bonds, and we do not have to furnish these bonds.

3. All reasonable expenses incurred at our request by the insured who is an individual to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings of up to $500 a day by that individual because of time off from work.

4. All costs taxed against the insured in the "suit" for that part of the judgment we pay, except attorneys' fees of the person or organization bringing the "suit".

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable limit of insurance. If we do not pay part of the judgment for any

reason other than it is more than the applicable limit of insurance, we will not pay any interest that accrues on that portion of the judgment.

**7.** The cost of any required appeal bond for any judgment that we appeal, but only for bond amounts for that part of the judgment that is for damages to which this insurance applies and which are within the applicable limit of insurance. We will pay, or reimburse the insured for, the cost of a higher appeal bond amount if we are required to do so under the law that applies. We will not be the principal under any appeal bond, and we do not have to furnish any appeal bond.

**8.** Up to $25,000 per policy period for physical damage to personal property that is in a person's possession at the time of his or her arrest and that is in the care, custody or control of an insured at the time of such damage. The Each Wrongful Act Deductible applies to this Supplementary Payment.

These payments will not reduce the limits of insurance.

Our duty to make such payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

### SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Common Policy Declarations as a public entity, you are an insured. Your lawfully elected or appointed officials, "executive officers" or directors are also insureds, but only with respect to their duties as your elected or appointed officials, "executive officers" or directors.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers", but only while performing duties related to the conduct of your business, and your "employees", other than your lawfully elected or appointed officials, "executive officers" or directors, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for "bodily injury" or "personal injury":

(1) To you, to a co-"employee" while in the course of his or her employment or performing duties re-

lated to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(2) To the spouse, child, parent, brother or sister of that co-"employee" or other "volunteer worker" as a consequence of injury described in Paragraph (1) above; or

(3) For which there is any obligation to share damages with or repay someone else who must pay damages because of injury described in Paragraph (1) or (2) above.

**b.** Any legal representative of an insured that has died, or become mentally incompetent, insolvent or bankrupt, but only with respect to duties as such. That representative will have all the rights and duties of such insured under this Coverage Part.

### SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations of this Coverage Part and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

The limits of insurance will not be reduced by the payment of the applicable deductible amount.

**2.** The Aggregate Limit is the most we will pay for the sum of all damages because of all "bodily injury", "property damage" and "personal injury".

If no amount is shown for the Aggregate Limit in the Declarations of this Coverage Part, the Aggregate Limit will be the higher of the Each Wrongful Act Limit or $100,000.

**3.** Subject to Paragraph **2.** above, the Each Wrongful Act Limit is the most we will pay for the sum of all damages because of all "bodily injury", "property damage" and "personal injury" caused by the same "wrongful act" or "related wrongful acts".

The limits of insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period

    © 2009 The Travelers Indemnity Company    **PR T1 04 02 09** Includes copyrighted material of Insurance Services Office, Inc. with its permission

of less than 12 months, starting with the beginning of the policy period, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed to be part of the last preceding annual or remaining period for the purposes of determining the limits of insurance.

## SECTION IV − DEDUCTIBLE

1. The Each Wrongful Act Deductible shown in the Declarations of this Coverage Part and the rules below fix the amount of damages and "defense expenses" incurred by, or on behalf of, you or any insured that you will be responsible for paying, regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

   The Each Wrongful Act Deductible does not apply to payments we make under Supplementary Payments, other than "defense expenses" and payments we make under Paragraph **8.** of Supplementary Payments.

2. The Each Wrongful Act Deductible applies to all damages and "defense expenses" for all claims or "suits" for "bodily injury", "property damage" or "personal injury" caused by the same "wrongful act" or "related wrongful acts".

3. The applicable limits of insurance will not be reduced by the amount of any damages or "defense expenses" within the deductible amount.

4. The terms of this policy, including those with respect to:

   a. Our right and duty with respect to the defense of claims or "suits"; and

   b. Your duties in the event of a "wrongful act", claim or "suit";

   apply irrespective of the application of the deductible amount.

5. If we settle a claim or "suit" for damages, or pay a judgment for damages awarded in a "suit", that are subject to a deductible, we may pay any part or all of the deductible amount. You will promptly reimburse us for such part of the deductible amount as we have paid.

6. If we pay "defense expenses" that are subject to a deductible, you will promptly reimburse us for such part of the deductible amount as we have paid.

7. If you do not reimburse us for a deductible amount that applies to damages or "defense expenses", and we are awarded the deductible amount we sought, or any part of that amount, in any legal proceeding against you, you agree to pay us the amount of the award and the following:

   a. "Our deductible recovery expenses"; and

   b. Interest, from the date of our notice of payment to you, on the deductible amount awarded to us.

## SECTION V − LAW ENFORCEMENT LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of A Wrongful Act, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of a "wrongful act" which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "wrongful act" was committed;

      (2) The names and addresses of any persons or organizations sustaining "bodily injury", "property damage" or "personal injury", and the names and addresses of any witnesses;

      (3) The nature and location of any "bodily injury", "property damage" or "personal injury" caused by the "wrongful act"; and

      (4) The names and addresses of each insured that committed the "wrongful act".

   b. If a claim or "suit" is made or brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:


Includes copyrighted material of Insurance Services Office, Inc. with its permission

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "bodily injury", "property damage" or "personal injury" to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**e.** The following provision applies to Paragraph **a.** above, but only for the purposes of the insurance provided under this Coverage Part to you or any insured listed in Paragraph **1.** or **2.** of Section **II** - Who Is An Insured:

Notice to us of such "wrongful act" must be given as soon as practicable only after the "wrongful act" is known by you or any "described authorized person".

## 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. As used in this provision, an agreed settlement means a settlement and release of liability signed by us, by the insured and by the claimant or the claimant's legal representative.

## 4. Other Insurance

If valid and collectible other insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as described in Paragraphs **a.** and **b.** below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

(i) Another insurance company;

(ii) Us or any of our affiliated insurance companies;

(iii) Any risk retention group;

(iv) Any self-insurance method or program, including any failure to buy insurance, or decision to not buy insurance, for any reason, in which case the insured will be deemed to be the provider of other insurance; or

(v) Any similar risk transfer or risk management method.

Other insurance does not include umbrella insurance, or excess insurance, that was bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

## a. Primary Insurance

This insurance is primary. If any other insurance is also primary, we will share with all that other insurance by the method described in Paragraph **b.** below.

## b. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each provider of insurance contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, the share of each provider of insurance is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all providers of insurance.

© 2009 The Travelers Indemnity Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission
PR T1 04 02 09

CC: 000 D559   F: 000 T: 001   * M: 02 I: 001   15153   * 2 C 0 0 2 41N05221

## 5. Premium Computation

We will compute all premiums for this Coverage Part in accordance with our rules and rates.

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

The unintentional omission of, or unintentional error in, any information provided by you which we relied upon in issuing this policy will not prejudice your rights under this insurance. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or nonrenewal in accordance with applicable insurance laws or regulations.

## 7. Separation Of Insureds

Except with respect to the limits of insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured shown in the Common Policy Declarations, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover from others all or part of any payment we have made under this Coverage Part in connection with a claim or "suit", those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or initiate an alternative dispute resolution proceeding to enforce those rights, or will transfer those rights to us and help us enforce them.

We will apply any amounts recovered in enforcing those rights of recovery in the following order:

**a.** First, we will reimburse any person or organization (including us or the insured) any amount that person or organization has paid in excess of the limits of insurance.

**b.** Then, if there is any amount remaining, we will retain an amount equal to the amount we have paid under this Coverage Part in connection with the claim or "suit".

**c.** Finally, if there is any amount remaining, we will pay that amount to the insured, including any amounts within any applicable deductible or self-insured retention.

If any amounts are recovered in enforcing those rights of recovery, reasonable expenses incurred in enforcing such rights will be shared among all persons or organizations receiving amounts recovered. Each such person's or organization's share of those expenses is based on the ratio of its amount recovered to the total amounts recovered by all such persons or organizations in enforcing such rights.

If the insured has agreed in a contract or agreement to waive that insured's right of recovery against any person or organization, we waive our right of recovery against such person or organization, but only for payments we make because of "bodily injury", "property damage" or "personal injury" caused by a "wrongful act" committed subsequent to the execution of the contract or agreement.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Common Policy Declarations written notice of the nonrenewal not less than 30 days before the end of the policy period.

If such notice is mailed, proof of mailing will be sufficient proof of such notice.

## SECTION VI — DEFINITIONS

1. "Auto" means:

**a.** A land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment;

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged, or would have been subject to such compulsory or financial responsibility law or other motor vehicle insurance law if you were not a public entity; or

**c.** Any other land vehicle not described in Paragraph **a.** or **b.** above that is designated as a covered auto under your automobile liability insurance.

**2.** "Bodily injury" means any harm, including sickness or disease, to the health of other persons, including mental anguish, injury or illness, or emotional distress.

**3.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** All other countries or jurisdictions in the world, except the "prohibited area", if the "bodily injury", "property damage" or "personal injury" arises out of:

**(1)** The "law enforcement activities or operations" of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(2)** Any "wrongful act" committed through the Internet or other electronic means of communication; or

**c.** International waters or airspace, unless the "wrongful act" is committed in the course of travel or transportation to, from or within the "prohibited area";

provided that the insured's responsibility to pay damages is determined in a "suit" on the merits brought in the territory described in Paragraph **a.** above or in a settlement we agree to.

**4.** "Defense expenses":

**a.** Means any of the following fees, costs or expenses which can be directly allocated to a particular claim or "suit":

**(1)** Fees of attorneys, or other authorized representatives where permitted, for legal services, whether by outside or staff representatives; or

**(2)** Court, alternative dispute resolution and other specific items of expense, whether incurred by an outside vendor or by one of our employees, including:

**(a)** Medical examinations of a claimant to determine the extent of our liability, degree of

permanency, or length of disability;

**(b)** Expert medical or other testimony;

**(c)** Autopsy;

**(d)** Witnesses and summonses;

**(e)** Copies of documents such as birth and death certificates and medical treatment records;

**(f)** Arbitration fees;

**(g)** Fees or costs for surveillance or other professional investigations which are conducted as part of handling of a claim or "suit"; and

**(h)** Fees or costs for loss prevention and engineering personnel, and fees or costs for rehabilitation nurses or other nurses, for services which are conducted as part of handling of a claim or "suit".

**b.** Does not include:

**(1)** Our expenses, including salaries, overhead and traveling expenses of our employees, except for those fees, costs or expenses described in Paragraphs **a.(1)** and **a.(2)** above incurred while handling a claim or "suit"; or

**(2)** Fees paid to independent claims professionals or attorneys (hired to perform the function of claim investigation normally performed by claim adjusters), for developing and investigating a claim so that a determination can be made of the cause, extent or responsibility for the injury, disease or damage, including evaluation and settlement of covered claims.

**5.** "Described authorized person" means:

**a.** Any of your elected or appointed officials, "executive officers" or directors; or

**b.** Your risk manager, or any leader of your legal, finance, risk management or other department that is responsible for insurance matters.

**6.** "Electric personal assistive mobility devices" means any self-balancing device designed to transport only one person with a maximum speed of 30 miles per hour.

© 2009 The Travelers Indemnity Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission

7. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker" or a prisoner employed by any insured.

8. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

9. "Hazardous properties" includes radioactive, toxic or explosive properties.

10. "Hostile fire" means a fire that becomes uncontrollable or breaks out from where it was intended to be.

11. "Independent contractor" means any person who is not the insured's "employee", "temporary worker" or "volunteer worker", but who performs duties related to the conduct of the insured's business because of a contract or agreement between the insured and that person for specified services.

12. "Law enforcement activities or operations":

   a. Means any of the official activities or operations of your police department, sheriff agency or other public safety organization, other than a fire district or department, that enforces the law and protects persons or property; and

   b. Includes:

      (1) Ownership, maintenance or use of a premises that you own, rent or borrow in order to conduct such activities or operations;

      (2) Ownership or operation of any of your jails, penal institutions or similar facilities;

      (3) Providing first aid at the time of an accident, crime or medical emergency;

      (4) Providing school security; and

      (5) "Moonlighting".

13. "Leased worker" means a person hired from a labor leasing firm under an agreement between the hirer and that firm to perform duties related to the conduct of the hirer's business. However, "leased worker" does not include a "temporary worker".

14. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft or "auto";

   b. While it is in or on an aircraft or "auto"; or

   c. While it is being moved from an aircraft or "auto" to the place where it is finally delivered.

   "Loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft or "auto".

15. "Moonlighting" means any secondary employment, or extra-duty assignment, approved by your police department, sheriff agency or other public safety organization that enforces the law and protects persons or property.

16. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts, "electric personal assistive mobility devices" and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers; or

f. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are maintained primarily for purposes other than the transportation of any person or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are:

(i) Subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged, or would have been subject to such compulsory or financial responsibility law or other motor vehicle insurance law if you were not a public entity;

(ii) Used solely on roads you own; or

(iii) Designated as a covered auto under your automobile liability insurance.

Land vehicles described in Paragraph **(i), (ii)** or **(iii)** above are considered "autos".

17. "Nuclear material" means any of the following materials defined in the Federal Atomic Energy Act or any of its amendments:

a. Source material;

b. Special nuclear material; or

c. By-product material.

18. "Our deductible recovery expenses" means all fees, costs and expenses incurred by us and our attorneys to recover a deductible amount in a legal proceeding brought by us against you. But if the deductible amount awarded to us is less than the full amount of the deductible payment we sought, "our deductible recovery expenses" will be a proportional amount based on the ratio of the deductible amount awarded to the full amount of the deductible payment we sought.

19. "Personal injury" means injury, other than "bodily injury", caused by one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

d. Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

e. Oral or written publication, including publication by electronic means, of material that:

(1) Appropriates a person's name, voice, photograph or likeness;

(2) Unreasonably places a person in a false light; or

(3) Discloses information about a person's private life;

f. False or improper service of process; or

© 2009 The Travelers Indemnity Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission

**g.** Violation of civil rights protected under any federal, state or local law.

**20.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**21.** "Professional health care services" includes:

**a.** Any medical, surgical, dental, laboratory, x-ray or nursing services, treatment, advice or instruction, or the related furnishing of food or beverages;

**b.** The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

**c.** The handling or treatment of corpses, including autopsies, organ donations and other postmortem procedures;

**d.** Any health or therapeutic service, treatment, advice or instruction;

**e.** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**f.** Any psychiatric, psychological or emotional counseling service, treatment, advice or instruction; or

**g.** The service by any person as a member of a formal accreditation, standards review, peer review or equivalent professional board or committee or member of any professional organization or committee.

**22.** "Prohibited area" means any country or jurisdiction while any trade sanction, embargo or similar regulation imposed by the United States of America applies to and prohibits the transaction of business with or within such country or jurisdiction.

**23.** "Property damage" means:

**a.** Physical damage to tangible property of others, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical damage that caused it; or

**b.** Loss of use of tangible property of others that is not physically damaged. All such loss of use will be deemed to occur at the time of the "wrongful act" that caused it.

For the purposes of this insurance, data, including information, facts or programs in any electronic or other format, is not tangible property.

**24.** "Related wrongful acts" means two or more "wrongful acts" that have as a common connection, tie or link any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions or causes.

**25.** "Suit" means a civil proceeding that seeks damages. "Suit" includes:

**a.** An arbitration proceeding that seeks damages and to which the insured must submit or submits with our consent; and

**b.** Any other alternative dispute resolution proceeding that seeks damages and to which the insured submits with our consent.

**26.** "Temporary worker" means a person who is hired to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**27.** "Volunteer worker" means a person, other than a prisoner, who:

**a.** Is not acting within the scope of his or her employment as an "employee" or "temporary worker";

**b.** Donates his or her work; and

**c.** Is not paid a fee, salary or other compensation for that work.

**28.** "Wrongful act" means any act, error or omission.

PUBLIC ENTITY MANAGEMENT LIABILITY

# PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE FORM

## THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE.
## PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Common Policy Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

The words "policy period" mean the Policy Period shown in the Declarations of this Coverage Part.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VII - Definitions.

## SECTION I — PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. We will have the right and duty to defend the insured against any claim or "suit" seeking those damages. However, we will have no duty to defend the insured against any claim or "suit" seeking damages because of loss to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" or claim and settle any claim or "suit". But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

We will have no other obligation or liability to pay sums or perform acts

or services unless explicitly provided for under Supplementary Payments.

b. This insurance applies to loss only if:

(1) The loss is caused by a "wrongful act" committed while conducting duties by or on behalf of you or "your boards";

(2) The "wrongful act" is committed in the "coverage territory";

(3) The "wrongful act" was not committed before the Retroactive Date shown in the Declarations of this Coverage Part or after the end of the policy period; and

(4) A claim or "suit" by a person or organization that seeks damages because of the loss is first made or brought against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section VI - Extended Reporting Periods.

c. A claim or "suit" by a person or organization that seeks damages will be deemed to have been first made or brought against any insured at the earlier of the following times:

(1) When we or any "described authorized person" first receives written notice of such claim or "suit", whichever is first; or

(2) When we first receive written notice from any insured of a specific "wrongful act" that caused the loss which resulted in such claim or "suit".

All claims or "suits" that seek damages because of loss caused by the same "wrongful act" or "related wrongful acts" will be deemed to have been first made or brought against any insured at the time the first of those claims or "suits" is first made or brought against any insured.

d. A claim or "suit" by a person or organization that seeks damages will

PUBLIC ENTITY MANAGEMENT LIABILITY

be deemed to have been first made or brought at the time we receive written notice from any insured of a specific "wrongful act" only if that notice contains all of the following information:

(1) How, when and where the "wrongful act" was committed;

(2) The names and addresses of any persons or organizations sustaining loss, and the names and addresses of any witnesses;

(3) The nature and location of any loss caused by the "wrongful act"; and

(4) The names and addresses of each insured that committed the "wrongful act".

Notice to us that:

(1) All or part of one or more of any insured's acts or omissions may in the future be discovered to be a "wrongful act"; or

(2) Any insured may in the future receive written notice of a "wrongful act", claim or "suit";

is not notice of a specific "wrongful act".

e. If no Retroactive Date is shown in the Declarations of this Coverage Part, the Retroactive Date will be deemed to be the first day of the policy period.

f. Each "wrongful act" in a series of "related wrongful acts" will be deemed to have been committed on the date the first "wrongful act" in that series is committed.

2. **Exclusions**

This insurance does not apply to:

a. **Boards, Commissions, Or Governmental Units Or Departments**

Loss arising out of any activities or operations of the following boards, commissions, or governmental units or departments:

(1) Airports;

(2) Electric or gas utilities;

(3) Health care facilities, including clinics, hospitals, nursing homes, rehabilitation facilities or blood banks;

(4) Housing authorities;

(5) Port authorities;

(6) Schools or school districts; or

(7) Transit authorities.

b. **Breach Of Contract**

Loss arising out of a breach of contract.

This exclusion does not apply to loss arising out of the breach of a mutual aid agreement.

c. **Claims Or Suits By Insureds Against Insureds**

Loss for which a claim is made or "suit" is brought by or on behalf of any current or former insured against any current or former insured.

d. **Complaint Or Enforcement Action**

Loss arising out of any complaint, enforcement action, claim or "suit" brought by or on behalf of any federal, state or local governmental regulatory or enforcement agency against any insured.

e. **Contractual Liability**

Loss for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to loss for which the insured would have liability for damages without the contract or agreement.

f. **Criminal, Dishonest, Fraudulent, Or Malicious Wrongful Acts Or Knowing Violations Of Rights Or Laws**

Loss arising out of any criminal, dishonest, fraudulent, or malicious "wrongful act", or any knowing violation of rights or laws, committed:

(1) By the insured; or

(2) With the consent or knowledge of the insured.

This exclusion does not apply to our duty to defend that insured until it has been determined or admitted in a legal proceeding that such "wrongful act" or knowing violation was committed:

(1) By that insured; or

(2) With the consent or knowledge of that insured.

g. **Debt Financing**

Loss arising out of any type of debt financing issued by you or on your behalf, including bonds, debentures, guarantees of debt or notes.

 © 2009 The Travelers Indemnity Company **PR T1 06 02 09**
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**h.  Employee Benefit Plans**

Loss arising out of the administration of, the conduct of any fiduciary duty for, or the performance of or failure to perform any act or obligation related to any actual or proposed:

(1) Benefit plan or trust;

(2) Stock option, stock subscription or stock ownership plan; or

(3) Compensation plan;

operated by you or on your behalf for the benefit of any current, former or prospective "employee" or "independent contractor".

**i.  Employment—Related Practices**

"Employment loss" to:

(1) A person arising out of a "wrongful employment practice offense"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of loss described in Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be held liable as an employer or in any other capacity; and

(2) Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the loss.

**j.  Injunctive Relief**

Any loss, cost or expense arising out of complying with any injunctive or other non-monetary relief or any agreement to provide such relief.

**k.  Injury Or Damage**

"Bodily injury", "property damage", "personal injury" or "advertising injury".

**l.  Insurance**

Loss arising out of the failure to obtain or maintain any type or amount of insurance, including any type of bond, self-insurance method or program, or any similar risk transfer or risk management method.

**m.  Intellectual Property**

Loss arising out of any actual or alleged infringement or violation of any of the following rights or laws:

(1) Copyright;

(2) Patent;

(3) Trade dress;

(4) Trade name;

(5) Trade secret;

(6) Trademark; or

(7) Other intellectual property rights or laws.

**n.  Investments**

Loss arising out of the purchase, sale, issuance or distribution of, or offer to purchase or sell, any debt or equity securities or other investments.

**o.  Known Wrongful Acts**

Loss arising out of any "wrongful act", including any part of "related wrongful acts", that any "described authorized person" knew about before the first date we or any of our affiliated insurance companies have continuously provided this or similar coverage to you.

A "described authorized person" will be deemed to know about a "wrongful act" at the earliest time when such "described authorized person":

(1) Reports all, or any part, of the "wrongful act" to us or any provider of other insurance;

(2) Receives a written or verbal demand or claim for damages because of the "wrongful act"; or

(3) Becomes aware by any other means that all, or any part, of the "wrongful act" has been committed.

**p.  Law Enforcement Activities Or Operations**

Loss arising out of "law enforcement activities or operations".

This exclusion does not apply to harm to any of your current or former "independent contractors" in connection with their "independent contractor" status.

**q.  Multiplied Damages**

The portion of any multiplied damage award that exceeds the amount multiplied.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

PUBLIC ENTITY MANAGEMENT LIABILITY

**r. Network And Information Security Liability**

Loss arising out of a "network and information security wrongful act".

**s. Nuclear Energy**

Loss arising out of the "hazardous properties" of "nuclear material".

**t. Pollution**

Loss arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

**u. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**v. Professional Health Care Services**

Loss arising out of providing or failing to provide "professional health care services".

**w. Sexual Harassment**

Loss arising out of any:

(1) Unwelcome sexual advance;

(2) Request for any sexual favor; or

(3) Other verbal, visual or physical conduct of a sexual nature.

**x. Strikes, Riots, Demonstrations Or Civil Commotions**

Loss arising out of any strike, riot, protest, demonstration, lock-out or civil commotion.

**y. Taking Of Private Property For Public Use Or Benefit**

Loss arising out of the taking or controlling of private property for public use or benefit, including the diminution in value of such property, by condemnation, inverse condemnation, adverse possession, dedication by

adverse use or any other method or proceeding.

**z. Taxes**

Loss arising out of the improper administration or collection of taxes, or loss that reflects any tax obligation.

**aa. Unlawful Personal Gains**

Loss arising out of any insured's personal profit, advantage or compensation to which that insured is not legally entitled.

**bb. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim we are investigating, any claim or "suit" we settle or any claim or "suit" against an insured we are defending:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We will not be the principal under these bonds, and we do not have to furnish these bonds.

3. All reasonable expenses incurred at our request by the insured who is an individual to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings of up to $500 a day by that individual because of time off from work.

4. All costs taxed against the insured in the "suit", but only for that part of the judgment we pay.

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable limit of insurance. If we do not pay part of the judgment for any reason other than it is more than the applicable limit of insurance, we will not pay any interest that accrues on that portion of the judgment.

CC: 000 D559

001 T: 000 I: 02 I: * M: 15163 41N05221 2 C O O 2 *

PUBLIC ENTITY MANAGEMENT LIABILITY

**7.** The cost of any required appeal bond for any judgment that we appeal, but only for bond amounts for that part of the judgment that is for damages to which this insurance applies and which are within the applicable limit of insurance. We will pay, or reimburse the insured for, the cost of a higher appeal bond amount if we are required to do so under the law that applies. We will not be the principal under any appeal bond, and we do not have to furnish any appeal bond.

These payments will not reduce the limits of insurance.

Our duty to make such payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

### SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Common Policy Declarations as a public entity, you are an insured. "Your boards" are also insureds.  Your lawfully elected or appointed officials, "executive officers" or directors are also insureds, but only with respect to their duties as your elected or appointed officials, "executive officers" or directors.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers", but only while performing duties related to the conduct of your business, and your "employees", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

**b.** Members of "your boards", but only for the conduct of their duties for you or for "your boards". "Employees" of "your boards" are also insureds, but only for work done within the scope of their employment by "your boards", or their performance of duties related to the conduct of the operations of "your boards".

**c.** Any legal representative of an insured that has died, or become mentally incompetent, insolvent or bankrupt, but only with respect to duties as such. That representative will have all the rights and duties of such insured under this Coverage Part.

**3.** Any of your lawfully elected or appointed officials, "executive officers", directors or "employees", or any members of "your boards", appointed at your request to serve with an outside tax ex-

empt entity will be deemed to be acting within the scope of their duties for you.

### SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations of this Coverage Part and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

The limits of insurance will not be reduced by the payment of the applicable deductible amount.

**2.** The Aggregate Limit is the most we will pay for the sum of all damages for the combined total of all claims or "suits" for loss.

If no amount is shown for the Aggregate Limit in the Declarations of this Coverage Part, the Aggregate Limit will be the higher of the Each Wrongful Act Limit or $100,000.

**3.** Subject to Paragraph **2.** above, the Each Wrongful Act Limit is the most we will pay for the sum of all damages for all claims or "suits" for loss caused by the same "wrongful act" or "related wrongful acts".

The limits of insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed to be part of the last preceding annual or remaining period for the purposes of determining the limits of insurance.

### SECTION IV – DEDUCTIBLE

**1.** The Each Wrongful Act Deductible shown in the Declarations of this Coverage Part and the rules below fix the amount of damages and "defense expenses" incurred by, or on behalf of, you or any insured that you will be responsible for paying, regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

The Each Wrongful Act Deductible does not apply to payments we make under

PUBLIC ENTITY MANAGEMENT LIABILITY

Supplementary Payments, other than "defense expenses".

2. The Each Wrongful Act Deductible applies to all damages and "defense expenses" for all claims or "suits" for loss caused by the same "wrongful act" or "related wrongful acts".

3. The applicable limits of insurance will not be reduced by the amount of any damages or "defense expenses" within the deductible amount.

4. The terms of this policy, including those with respect to:

   a. Our right and duty with respect to the defense of claims or "suits"; and

   b. Your duties in the event of a "wrongful act", claim or "suit";

   apply irrespective of the application of the deductible amount.

5. If we settle a claim or "suit" for damages, or pay a judgment for damages awarded in a "suit", that are subject to a deductible, we may pay any part or all of the deductible amount. You will promptly reimburse us for such part of the deductible amount as we have paid.

6. If we pay "defense expenses" that are subject to a deductible, you will promptly reimburse us for such part of the deductible amount as we have paid.

7. If you do not reimburse us for a deductible amount that applies to damages or "defense expenses", and we are awarded the deductible amount we sought, or any part of that amount, in any legal proceeding against you, you agree to pay us the amount of the award and the following:

   a. "Our deductible recovery expenses"; and

   b. Interest, from the date of our notice of payment to you, on the deductible amount awarded to us.

## SECTION V — PUBLIC ENTITY MANAGEMENT LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of A Wrongful Act, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of a "wrongful act" which may result in a

claim. To the extent possible, notice should include:

   (1) How, when and where the "wrongful act" was committed;

   (2) The names and addresses of any persons or organizations sustaining loss, and the names and addresses of any witnesses;

   (3) The nature and location of any loss caused by the "wrongful act"; and

   (4) The names and addresses of each insured that committed the "wrongful act".

   b. If a claim or "suit" is made or brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the claim or "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of loss to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

   e. The following provision applies to Paragraph a. above, but only for the purposes of the insurance provided under this Coverage Part to you or any insured listed in Paragraph 1. or 2. of Section II - Who Is An Insured:

   Notice to us of such "wrongful act" must be given as soon as practicable only after the "wrongful act" is

© 2009 The Travelers Indemnity Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

PUBLIC ENTITY MANAGEMENT LIABILITY

known by you or any "described authorized person".

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. As used in this provision, an agreed settlement means a settlement and release of liability signed by us, by the insured and by the claimant or the claimant's legal representative.

### 4. Other Insurance

If valid and collectible other insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as described in Paragraphs **a.** and **b.** below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

**(i)** Another insurance company;

**(ii)** Us or any of our affiliated insurance companies;

**(iii)** Any risk retention group;

**(iv)** Any self-insurance method or program, including any failure to buy insurance, or decision to not buy insurance, for any reason, in which case the insured will be deemed to be the provider of other insurance; or

**(v)** Any similar risk transfer or risk management method.

Other insurance does not include umbrella insurance, or excess insurance, that was bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If any other insurance is also primary,

we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to "your boards", members of "your boards" or "employees" of "your boards".

When this insurance is excess, we will have no duty to defend the insured against any claim or "suit" if any provider of other insurance has a duty to defend the insured against that claim or "suit". If no provider of other insurance defends, we will undertake to do so, but we will be entitled to the insured's rights against all those providers of other insurance.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all such other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each provider of insurance contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, the share of each provider of insurance is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all providers of insurance.

### 5. Premium Computation

We will compute all premiums for this Coverage Part in accordance with our rules and rates.

PUBLIC ENTITY MANAGEMENT LIABILITY

## 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

The unintentional omission of, or unintentional error in, any information provided by you which we relied upon in issuing this policy will not prejudice your rights under this insurance. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or nonrenewal in accordance with applicable insurance laws or regulations.

## 7. Separation Of Insureds

Except with respect to the limits of insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured shown in the Common Policy Declarations, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover from others all or part of any payment we have made under this Coverage Part in connection with a claim or "suit", those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or initiate an alternative dispute resolution proceeding to enforce those rights, or will transfer those rights to us and help us enforce them.

We will apply any amounts recovered in enforcing those rights of recovery in the following order:

a. First, we will reimburse any person or organization (including us or the insured) any amount that person or organization has paid in excess of the limits of insurance.

b. Then, if there is any amount remaining, we will retain an amount equal to the amount we have paid under this Coverage Part in connection with the claim or "suit".

c. Finally, if there is any amount remaining, we will pay that amount to the insured, including any amounts within any applicable deductible or self-insured retention.

If any amounts are recovered in enforcing those rights of recovery, reasonable expenses incurred in enforcing such rights will be shared among all persons or organizations receiving amounts recovered. Each such person's or organization's share of those expenses is based on the ratio of its amount recovered to the total amounts recovered by all such persons or organizations in enforcing such rights.

If the insured has agreed in a contract or agreement to waive that insured's right of recovery against any person or organization, we waive our right of recovery against such person or organization, but only for payments we make because of loss caused by a "wrongful act" committed subsequent to the execution of the contract or agreement.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Common Policy Declarations written notice of the nonrenewal not less than 30 days before the end of the policy period.

If such notice is mailed, proof of mailing will be sufficient proof of such notice.

## SECTION VI — EXTENDED REPORTING PERIODS

1. We will provide one or more Extended Reporting Periods, as described below, if this Coverage Part is canceled or not renewed, or replaced or renewed by us with insurance that applies on other than a claims-made basis.

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims or "suits" for loss caused by a "wrongful act" committed before the end of the policy period and after the Retroactive Date.

   Once in effect, Extended Reporting Periods may not be canceled.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for 90 days.

   The Basic Extended Reporting Period does not apply to claims or "suits" that are covered under any future insurance

CC: 000 D559

001 T: 000 I: 02 I: *M: 15167 *2C002 41N05221 *

PUBLIC ENTITY MANAGEMENT LIABILITY

you purchase, or that would be covered under such insurance but for the exhaustion of its applicable limit of insurance.

4. The Basic Extended Reporting Period does not reinstate or increase the limits of insurance.

5. A Supplemental Extended Reporting Period of 12 months is available, but only by an endorsement and for an extra charge. This supplemental period replaces the Basic Extended Reporting Period.

The Supplemental Extended Reporting Period will not go into effect unless we receive all of the following within 90 days after the end of the policy period and you have fulfilled all other duties, and complied with all other conditions and requirements, under this policy:

a. A written request from you to purchase the Supplemental Extended Reporting Period Endorsement;

b. Full payment of the earned premium for this policy;

c. Payment of the additional premium for the Supplemental Extended Reporting Period Endorsement; and

d. Repayment of any deductible you owe us under this policy.

We will determine the additional premium for that endorsement in accordance with our rules and rates. The additional premium will not exceed 75% of the annual premium for this Coverage Part.

This endorsement will set forth the terms, not inconsistent with this Section VI - Extended Reporting Periods, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims or "suits" first made or brought against any insured during such period is excess over any valid and collectible other insurance available under insurance in force after the Supplemental Extended Reporting Period starts.

6. The Supplemental Extended Reporting Period does not reinstate or increase the limits of insurance.

### SECTION VII – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers

or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Advertising injury" means injury, other than "personal injury", caused by one or more of the following offenses:

a. Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

b. Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

(1) Appropriates a person's name, voice, photograph or likeness;

(2) Unreasonably places a person in a false light; or

(3) Discloses information about a person's private life; or

c. Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

3. "Authorized user" includes your customer, supplier or supporter.

4. "Bodily injury" means:

a. Physical harm, including sickness or disease, sustained by a person; or

b. Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

5. "Computer virus" means malicious code that is introduced through your web-site or "your computer or communications network".   Once introduced, such code may destroy, alter, contaminate or de-

PUBLIC ENTITY MANAGEMENT LIABILITY

grade the integrity, quality or performance of data of any computer application software, computer network, or computer operating system or related network.

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** All other countries or jurisdictions in the world except the "prohibited area"; or

**c.** International waters or airspace, unless the "wrongful act" is committed in the course of travel or transportation to, from or within the "prohibited area";

provided that the insured's responsibility to pay damages is determined in a "suit" on the merits brought in the territory described in Paragraph a. above or in a settlement we agree to.

**7.** "Defense expenses":

**a.** Means any of the following fees, costs or expenses which can be directly allocated to a particular claim or "suit":

(1) Fees of attorneys, or other authorized representatives where permitted, for legal services, whether by outside or staff representatives; or

(2) Court, alternative dispute resolution and other specific items of expense, whether incurred by an outside vendor or by one of our employees, including:

(a) Expert testimony;

(b) Autopsy;

(c) Witnesses and summonses;

(d) Copies of documents such as birth and death certificates and medical treatment records;

(e) Arbitration fees;

(f) Fees or costs for surveillance or other professional investigations which are conducted as part of handling of a claim or "suit"; and

(g) Fees or costs for loss prevention and engineering personnel for services which are conducted as part of handling of a claim or "suit".

**b.** Does not include:

(1) Our expenses, including salaries, overhead and traveling expenses of our employees, except for those fees, costs or expenses described in Paragraphs **a.**(1) and **a.**(2) above incurred while handling a claim or "suit"; or

(2) Fees paid to independent claims professionals or attorneys (hired to perform the function of claim investigation normally performed by claim adjusters), for developing and investigating a claim so that a determination can be made of the cause or extent of, or responsibility for, the loss, including evaluation and settlement of covered claims.

**8.** "Described authorized person" means:

**a.** Any of your elected or appointed officials, "executive officers" or directors;

**b.** Any member of "your boards"; or

**c.** Your risk manager, or any leader of your legal, finance, risk management or other department that is responsible for insurance matters.

**9.** "Discrimination" means any violation of a person's rights with respect to:

**a.** That person's race, color, national origin, religion, gender, marital status, age, sexual orientation, or physical or mental disability;

**b.** Any other class or characteristic afforded rights under any federal, state, or local law, rule, or regulation.

**10.** "Employee" includes a "leased worker". "Employee" does not include a prisoner employed by any insured.

**11.** "Employment loss" means:

**a.** Employment-related harm to any of your current, former or prospective "employees";

**b.** Harm to any of your current, former or prospective "volunteer workers" in connection with their "volunteer worker" status; or

**c.** Harm to any of your current or former "independent contractors" in connection with their "independent contractor" status.

**12.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-

© 2009 The Travelers Indemnity Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
PR T1 06 02 09

laws or any other similar governing document.

13. "Harassment" means any unwelcome sexual advance, request for any sexual favor, or other verbal, visual or physical conduct of a sexual or non-sexual nature, when such conduct:

a. Is connected to a decision affecting a person's job performance for you or a person's performance of duties related to the conduct of your business;

b. Interferes with a person's job performance for you or a person's performance of duties related to the conduct of your business; or

c. Creates an intimidating, hostile, or offensive working environment affecting a person's job performance for you or a person's performance of duties related to the conduct of your business.

14. "Hazardous properties" includes radioactive, toxic or explosive properties.

15. "Independent contractor" means any person who is not the insured's "employee" or "volunteer worker", but who performs duties related to the conduct of the insured's business because of a contract or agreement between the insured and that person for specified services.

16. "Joint powers authority" means any organization formed by two or more public entities that have agreed in a contract or agreement to jointly exercise any power common to them.

17. "Law enforcement activities or operations":

a. Means any of the official activities or operations of your police department, sheriff agency or other public safety organization, other than a fire district or department, that enforces the law and protects persons or property; and

b. Includes:

(1) Ownership, maintenance or use of a premises that you own, rent or borrow in order to conduct such activities or operations;

(2) Ownership or operation of any of your jails, penal institutions or similar facilities;

(3) Providing first aid at the time of an accident, crime or medical emergency;

(4) Providing school security; and

(5) "Moonlighting".

18. "Leased worker" means a person hired from a labor leasing firm under an agreement between the hirer and that firm to perform duties related to the conduct of the hirer's business.

19. "Moonlighting" means any secondary employment, or extra-duty assignment, approved by your police department, sheriff agency or other public safety organization that enforces the law and protects persons or property.

20. "Network and information security wrongful act" means any of the following committed by or on behalf of an insured in the conduct of your business:

a. Failure to prevent the transmission of a "computer virus".

b. Failure to provide any "authorized user" of your web-site or "your computer or communications network" with access to such website or such computer or communications network.

c. Failure to prevent unauthorized access to, or use of, electronic data containing private or confidential information of others.

21. "Nuclear material" means any of the following materials defined in the Federal Atomic Energy Act or any of its amendments:

a. Source material;

b. Special nuclear material; or

c. By-product material.

22. "Our deductible recovery expenses" means all fees, costs and expenses incurred by us and our attorneys to recover a deductible amount in a legal proceeding brought by us against you. But if the deductible amount awarded to us is less than the full amount of the deductible payment we sought, "our deductible recovery expenses" will be a proportional amount based on the ratio of the deductible amount awarded to the full amount of the deductible payment we sought.

23. "Personal injury" means injury, other than "advertising injury", caused by one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

PUBLIC ENTITY MANAGEMENT LIABILITY

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

**d.** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

**e.** Oral or written publication, including publication by electronic means, of material that:

(1) Appropriates a person's name, voice, photograph or likeness;

(2) Unreasonably places a person in a false light; or

(3) Discloses information about a person's private life.

**24.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**25.** "Professional health care services" includes:

**a.** Any medical, surgical, dental, laboratory, x-ray or nursing services, treatment, advice or instruction, or the related furnishing of food or beverages;

**b.** The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

**c.** The handling or treatment of corpses, including autopsies, organ donations and other postmortem procedures;

**d.** Any health or therapeutic service, treatment, advice or instruction;

**e.** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**f.** Any psychiatric, psychological or emotional counseling service, treatment, advice or instruction; or

**g.** The service by any person as a member of a formal accreditation, standards review, peer review or equivalent professional board or committee or member of any professional organization or committee.

**26.** "Prohibited area" means any country or jurisdiction while any trade sanction, embargo or similar regulation imposed by the United States of America applies to and prohibits the transaction of business with or within such country or jurisdiction.

**27.** "Property damage" means:

**a.** Physical damage to tangible property of others, including all resulting loss of use of that property; or

**b.** Loss of use of tangible property of others that is not physically damaged.

For the purposes of this insurance, data, including information, facts or programs in any electronic or other format, is not tangible property.

**28.** "Related wrongful acts" means two or more "wrongful acts" that have as a common connection, tie or link any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions or causes.

**29.** "Retaliatory action" includes any action directed at any person that is in response to that person's:

**a.** Exercising any legally afforded right;

**b.** Supporting in any way another person's exercise of any legally afforded right;

**c.** Participating in any strike or lockout;

**d.** Making any claim or "suit" against you or any other insured;

**e.** Testifying against you or any other insured in any legal proceeding;

**f.** Declining to perform any illegal or unethical act; or

**g.** Threatened or actual reporting of any illegal operations or activities actually or allegedly conducted within your business.

**30.** "Slogan" means a phrase that others use for the purpose of attracting attention in their advertising.

 © 2009 The Travelers Indemnity Company   PR T1 06 02 09
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

PUBLIC ENTITY MANAGEMENT LIABILITY

**31.** "Suit" means a civil proceeding that seeks damages. "Suit" includes:

**a.** An arbitration proceeding that seeks damages and to which the insured must submit or submits with our consent; and

**b.** Any other alternative dispute resolution proceeding that seeks damages and to which the insured submits with our consent.

**32.** "Title" means a name of a literary or artistic work.

**33.** "Volunteer worker" means a person, other than a prisoner, who:

**a.** Is not acting within the scope of his or her employment as an "employee";

**b.** Donates his or her work; and

**c.** Is not paid a fee, salary or other compensation for that work.

**34.** "Wrongful act" means any act, error or omission.

**35.** "Wrongful employment practice offense" means any of the following offenses committed by or on behalf of an insured in the conduct of your business:

**a.** "Discrimination" against any of your current, former or prospective "employees" or "volunteer workers";

**b.** Wrongful termination of any of your current, former or prospective "employees" or "volunteer workers";

**c.** "Harassment" of any of your current, former or prospective "employees" or "volunteer workers", or current or former "independent contractors";

**d.** "Retaliatory action" against any or your current, former or prospective "employees" or "volunteer workers";

**e.** Wrongful, excessive, or unfair discipline of any of your current, former or prospective "employees" or "volunteer workers";

**f.** Wrongful hiring, supervision, or demotion of, or failure to promote, any of your current, former or prospective "employees" or "volunteer workers"; or

**g.** Misrepresentation to, or defamation, libel, slander, disparagement or invasion of privacy of, any of your current, former or prospective "employees" or "volunteer workers".

**36.** "Your boards":

**a.** Means any board, commission, or other governmental unit or department that:

**(1)** Is under your jurisdiction; and

**(2)** Is funded and operated as part of your total operating budget.

**b.** Does not include any "joint powers authority".

**37.** "Your computer or communications network" means any computer or communications network that you rent, lease, license, or borrow from others, own or operate.

EMPLOYMENT-RELATED PRACTICES LIABILITY

# PUBLIC ENTITY EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE FORM

**THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE. DEFENSE EXPENSES ARE PAYABLE WITHIN, AND ARE NOT IN ADDITION TO, THE LIMITS OF INSURANCE. PAYMENT OF DEFENSE EXPENSES WILL REDUCE THE LIMITS OF INSURANCE. PLEASE READ THE ENTIRE FORM CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Common Policy Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

The words "policy period" mean the Policy Period shown in the Declarations of this Coverage Part.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VII - Definitions.

## SECTION I – PUBLIC ENTITY EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "employment loss" to which this insurance applies. We will have the right and duty to defend the insured against any claim or "suit" seeking those damages. However, we will have no duty to defend the insured against any claim or "suit" seeking damages because of "employment loss" to which this insurance does not apply.

We will also have the right and duty to defend the insured against any "suit" that is a "governmental administrative proceeding" seeking injunctive relief for "employment loss" to which this insurance applies. However, we will have no duty to defend the insured against any "suit" that is a "governmental administrative proceeding" seeking injunctive relief for "employment loss" to which this insurance does not apply. For the purposes of our right and duty to defend the insured under this paragraph, a "suit" that is

a "governmental administrative proceeding" seeking injunctive relief for "employment loss" will be deemed to be a "suit" by a person or organization that seeks damages because of such "employment loss".

When we defend a claim or "suit" against an insured, we will pay reasonable "defense expenses". Payment of such "defense expenses" will reduce the available limits of insurance. We may, at our discretion, investigate any "wrongful employment practice offense" or claim and settle any claim or "suit". But:

**(1)** The amount we will pay for damages or "defense expenses" is limited as described in Section III - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or "defense expenses".

We will have no other obligation or liability to pay sums or perform acts or services unless explicitly provided for under Supplementary Payments.

Damages include the attorneys' fees of the person or organization making a claim or bringing a "suit" if such fees are awarded, or paid in a settlement, for "employment loss" to which this insurance applies.

**b.** This insurance applies to "employment loss" only if:

**(1)** The "employment loss" is caused by a "wrongful employment practice offense" committed in the "coverage territory";

**(2)** The "wrongful employment practice offense" was not committed before the Retroactive Date shown in the Declarations of this Coverage Part or after the end of the policy period; and

**(3)** A claim or "suit" by a person or organization that seeks damages because of the "employment

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

loss" is first made or brought against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Section **VI** - Extended Reporting Periods.

**c.** A claim or "suit" by a person or organization that seeks damages will be deemed to have been first made or brought against any insured at the earlier of the following times:

**(1)** When we or any "described authorized person" first receives written notice of such claim or "suit", whichever is first; or

**(2)** When we first receive written notice from any insured of a specific "wrongful employment practice offense" that caused the "employment loss" which resulted in such claim or "suit".

All claims or "suits" that seek damages because of "employment loss" caused by the same "wrongful employment practice offense" or "related wrongful employment practice offenses" will be deemed to have been first made or brought against any insured at the time the first of those claims or "suits" is first made or brought against any insured.

**d.** A claim or "suit" by a person or organization that seeks damages will be deemed to have been first made or brought at the time we receive written notice from any insured of a specific "wrongful employment practice offense" only if that notice contains all of the following information:

**(1)** How, when and where the "wrongful employment practice offense" was committed;

**(2)** The names and addresses of any persons or organizations sustaining "employment loss", and the names and addresses of any witnesses;

**(3)** The nature and location of any "employment loss" caused by the "wrongful employment practice offense"; and

**(4)** The names and addresses of each insured that committed the "wrongful employment practice offense".

Notice to us that:

**(1)** All or part of one or more of any insured's acts or omissions

may in the future be discovered to be a "wrongful employment practice offense"; or

**(2)** Any insured may in the future receive written notice of a "wrongful employment practice offense", claim or "suit";

is not notice of a specific "wrongful employment practice offense".

**e.** If no Retroactive Date is shown in the Declarations of this Coverage Part, the Retroactive Date will be deemed to be the first day of the policy period.

**f.** Each "wrongful employment practice offense" in a series of "related wrongful employment practice offenses" will be deemed to have been committed on the date the first "wrongful employment practice offense" in that series is committed.

## 2. Exclusions

This insurance does not apply to:

**a. Boards, Commissions, Or Governmental Units Or Departments**

"Employment loss" arising out of any activities or operations of the following boards, commissions, or governmental units or departments:

**(1)** Airports;

**(2)** Electric or gas utilities;

**(3)** Health care facilities, including clinics, hospitals, nursing homes, rehabilitation facilities or blood banks;

**(4)** Housing authorities;

**(5)** Port authorities;

**(6)** Schools or school districts; or

**(7)** Transit authorities.

**b. Bodily Injury Or Property Damage**

"Bodily injury" or "property damage".

**c. Breach Of Contract**

"Employment loss" arising out of the breach of any written contract or agreement.

**d. Contractual Liability**

"Employment loss" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to "employment loss" for which the insured would have liability for dam-

ages without the contract or agreement.

**e. Criminal, Dishonest, Fraudulent, Or Malicious Wrongful Employment Practice Offenses Or Knowing Violations Of Rights Or Laws**

"Employment loss" arising out of any criminal, dishonest, fraudulent, or malicious "wrongful employment practice offense", or any knowing violation of rights or laws, committed:

(1) By the insured; or

(2) With the consent or knowledge of the insured.

This exclusion does not apply to our duty to defend that insured until it has been determined or admitted in a legal proceeding that such "wrongful employment practice offense" or knowing violation was committed:

(1) By that insured; or

(2) With the consent or knowledge of that insured.

**f. Employment Termination Or Relocation Due To Operational Decisions**

"Employment loss" arising out of any termination of employment, "independent contractor" status or "volunteer worker" status, or any job relocation or reassignment, that is necessary because you have:

(1) Filed for bankruptcy protection, or been placed in receivership or liquidation;

(2) Merged with, acquired, or been acquired by another entity; or

(3) Transferred any part of your operations to another entity.

**g. Fines Or Penalties**

Any fine or penalty imposed by law or regulation, or that any insured has agreed to pay for any reason.

This exclusion does not apply to punitive or exemplary damages.

**h. Injunctive Relief**

Any loss, cost or expense arising out of complying with any injunctive or other non-monetary relief or any agreement to provide such relief.

This exclusion does not apply to our duty to defend the insured against a "suit" that is a "governmental administrative proceeding".

**i. Known Wrongful Employment Practice Offenses**

"Employment loss" arising out of any "wrongful employment practice offense", including any part of "related wrongful employment practice offenses", that any "described authorized person" knew about before the first date we or any of our affiliated insurance companies have continuously provided this or similar coverage to you.

A "described authorized person" will be deemed to know about a "wrongful employment practice offense" at the earliest time when such "described authorized person":

(1) Reports all, or any part, of the "wrongful employment practice offense" to us or any provider of other insurance;

(2) Receives a written or verbal demand or claim for damages because of the "wrongful employment practice offense"; or

(3) Becomes aware by any other means that all, or any part, of the "wrongful employment practice offense" has been committed.

**j. Multiplied Damages**

The portion of any multiplied damage award that exceeds the amount multiplied.

**k. Other Employment Laws**

"Employment loss" arising out of any violation of any of the duties or responsibilities required of you as an employer by the following laws, amendments to those laws, rules or regulations:

(1) Fair Labor Standards Act, except the Equal Pay Act;

(2) National Labor Relations Act;

(3) Worker Adjustment and Retraining Notification Act;

(4) Consolidated Omnibus Budget Reconciliation Act of 1985;

(5) Occupational Safety and Health Act; or

(6) Employee Retirement Income Security Act of 1974.

This exclusion does not apply to "employment loss" that arises out of "retaliatory action" against any of your "employees" for the "employee's" exercising of rights afforded by such laws.

l. **Strikes Or Lockouts**

"Employment loss" to any of your "employees":

(1) On strike or locked out; or

(2) Temporarily or permanently replaced;

due to any labor dispute, including breach of a collective bargaining agreement.

This exclusion does not apply to "employment loss" that arises out of "retaliatory action" taken in response to any of your "employees" for participating in any strike or lockout.

m. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim we are investigating, any claim or "suit" we settle or any claim or "suit" against an insured we are defending:

1. All expenses, other than "defense expenses", we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We will not be the principal under these bonds, and we do not have to furnish these bonds.

3. All reasonable expenses incurred at our request by the insured who is an individual to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings of up to $500 a day by that individual because of time off from work.

4. All costs taxed against the insured in the "suit" for that part of the judgment we pay, except attorneys' fees of the person or organization bringing the "suit".

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable limit of insurance. If we do not pay part of the judgment for any reason other than it is more than the applicable limit of insurance, we will not pay any interest that accrues on that portion of the judgment.

7. The cost of any required appeal bond for any judgment that we appeal, but only for bond amounts for that part of the judgment that is for damages to which this insurance applies and which are within the applicable limit of insurance. We will pay, or reimburse the insured for, the cost of a higher appeal bond amount if we are required to do so under the law that applies. We will not be the principal under any appeal bond, and we do not have to furnish any appeal bond.

These payments will not reduce the limits of insurance.

Our duty to make such payments ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or "defense expenses".

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Common Policy Declarations as a public entity, you are an insured. "Your boards" are also insureds. Your lawfully elected or appointed officials, "executive officers" or directors are also insureds, but only with respect to their duties as your elected or appointed officials, "executive officers" or directors.

2. Each of the following is also an insured:

   a. Your "volunteer workers", but only while performing duties related to the conduct of your business, and your "employees", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

   b. Members of "your boards", but only for the conduct of their duties for you or for "your boards". "Employees" of "your boards" are also insureds, but only for work done within the scope of their employment by "your boards", or their performance of duties related to the conduct of the operations of "your boards".

   c. Any legal representative of an insured that has died, or become mentally incompetent, insolvent or bankrupt, but only with respect to duties as such. That representative will have all the rights and duties of

such insured under this Coverage Part.

3. Any of your lawfully elected or appointed officials, "executive officers", directors or "employees", or any members of "your boards", appointed at your request to serve with an outside tax exempt entity will be deemed to be acting within the scope of their duties for you.

## SECTION III — LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations of this Coverage Part and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

   The limits of insurance will not be reduced by the payment of the applicable deductible amount.

2. The Aggregate Limit is the most we will pay for the sum of all damages and "defense expenses" for the combined total of all claims or "suits" for "employment loss".

   If no amount is shown for the Aggregate Limit in the Declarations of this Coverage Part, the Aggregate Limit will be the higher of the Each Wrongful Practice Offense Limit or $100,000.

3. Subject to Paragraph **2.** above, the Each Wrongful Employment Practice Offense Limit is the most we will pay for the sum of all damages and "defense expenses" for all claims or "suits" for "employment loss" caused by the same "wrongful employment practice offense" or "related wrongful employment practice offenses".

The limits of insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed to be part of the last preceding annual or remaining period for the purposes of determining the limits of insurance.

## SECTION IV — DEDUCTIBLE

1. The Each Wrongful Employment Practice Offense Deductible shown in the Declarations of this Coverage Part and the rules below fix the amount of damages

and "defense expenses" incurred by, or on behalf of, you or any insured that you will be responsible for paying, regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

The Each Wrongful Employment Practice Offense Deductible does not apply to payments we make under Supplementary Payments.

2. The Each Wrongful Employment Practice Offense Deductible applies to all damages and "defense expenses" for all claims or "suits" for "employment loss" caused by the same "wrongful employment practice offense" or "related wrongful employment practice offenses".

3. The applicable limits of insurance will not be reduced by the amount of any damages or "defense expenses" within the deductible amount.

4. The terms of this policy, including those with respect to:

   a. Our right and duty with respect to the defense of claims or "suits"; and

   b. Your duties in the event of a "wrongful employment practice offense", claim or "suit";

   apply irrespective of the application of the deductible amount.

5. If we settle a claim or "suit" for damages, or pay a judgment for damages awarded in a "suit", that are subject to a deductible, we may pay any part or all of the deductible amount. You will promptly reimburse us for such part of the deductible amount as we have paid.

6. If we pay "defense expenses" that are subject to a deductible, you will promptly reimburse us for such part of the deductible amount as we have paid.

7. If you do not reimburse us for a deductible amount that applies to damages or "defense expenses", and we are awarded the deductible amount we sought, or any part of that amount, in any legal proceeding against you, you agree to pay us the amount of the award and the following:

   a. "Our deductible recovery expenses"; and

   b. Interest, from the date of our notice of payment to you, on the deductible amount awarded to us.

## SECTION V – PUBLIC ENTITY EMPLOYMENT-RELATED PRACTICES LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of A Wrongful Employment Practice Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of a "wrongful employment practice offense" which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "wrongful employment practice offense" was committed;

(2) The names and addresses of any persons or organizations sustaining "employment loss", and the names and addresses of any witnesses;

(3) The nature and location of any "employment loss" caused by the "wrongful employment practice offense"; and

(4) The names and addresses of each insured that committed the "wrongful employment practice offense".

b. If a claim or "suit" is made or brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "employment loss" to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

e. The following provision applies to Paragraph a. above, but only for the purposes of the insurance provided under this Coverage Part to you or any insured listed in Paragraph 1. or 2. of Section II – Who Is An Insured:

Notice to us of such "wrongful employment practice offense" must be given as soon as practicable only after the "wrongful employment practice offense" is known by you or any "described authorized person".

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. As used in this provision, an agreed settlement means a settlement and release of liability signed by us, by the insured and by the claimant or the claimant's legal representative.

### 4. Other Insurance

If valid and collectible other insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as described in Paragraphs a. and b. below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

(i) Another insurance company;

(ii) Us or any of our affiliated insurance companies;

(iii) Any risk retention group;

© 2009 The Travelers Indemnity Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(iv)** Any self-insurance method or program, including any failure to buy insurance, or decision to not buy insurance, for any reason, in which case the insured will be deemed to be the provider of other insurance; or

**(v)** Any similar risk transfer or risk management method.

Other insurance does not include umbrella insurance, or excess insurance, that was bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If any other insurance is also primary, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to "your boards", members of "your boards" or "employees" of "your boards".

When this insurance is excess, we will have no duty to defend the insured against any claim or "suit" if any provider of other insurance has a duty to defend the insured against that claim or "suit". If no provider of other insurance defends, we will undertake to do so, but we will be entitled to the insured's rights against all those providers of other insurance.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all such other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each provider of insurance contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, the share of each provider of insurance is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all providers of insurance.

**5. Premium Computation**

We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements and representations made in your application for employment practices liability insurance, and in all materials submitted in connection with it, are accurate and complete;

**b.** The statements in the Declarations are accurate and complete;

**c.** Those statements are based upon representations you made to us; and

**d.** We have issued this policy in reliance upon your representations.

The unintentional omission of, or unintentional error in, any information provided by you which we relied upon in issuing this policy will not prejudice your rights under this insurance. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or nonrenewal in accordance with applicable insurance laws or regulations.

**7. Separation Of Insureds**

Except with respect to the limits of insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured shown in the Common Policy Declarations, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Control Of Defense**

Before the available limit of insurance is used up, you may take over control of the defense, including the appeal, of

any outstanding claim or "suit" previously reported to us if:

**a.** We and you agree; or

**b.** A court orders you to do so.

If the available limit of insurance is used up, we will notify you as soon as practicable of all outstanding claims or "suits", so you can arrange to take over control of their defense.

We agree to take whatever steps are necessary during a transfer of control of defense of an outstanding claim or "suit" to continue that defense and avoid a default judgment during such transfer. When we take such steps, you agree that we do not waive or give up any of our rights. You also agree to repay the reasonable expenses we incur for such steps taken after the available limit of insurance is used up.

**9. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover from others all or part of any payment we have made under this Coverage Part in connection with a claim or "suit", those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or initiate an alternative dispute resolution proceeding to enforce those rights, or will transfer those rights to us and help us enforce them.

We will apply any amounts recovered in enforcing those rights of recovery in the following order:

**a.** First, we will reimburse any person or organization (including us or the insured) any amount that person or organization has paid in excess of the limits of insurance.

**b.** Then, if there is any amount remaining, we will retain an amount equal to the amount we have paid under this Coverage Part in connection with the claim or "suit".

**c.** Finally, if there is any amount remaining, we will pay that amount to the insured, including any amounts within any applicable deductible or self-insured retention.

If any amounts are recovered in enforcing those rights of recovery, reasonable expenses incurred in enforcing such rights will be shared among all persons or organizations receiving amounts recovered. Each such person's or organization's share of those expenses is based on the ratio of its amount recovered to the total amounts recovered by

all such persons or organizations in enforcing such rights.

If the insured has agreed in a contract or agreement to waive that insured's right of recovery against any person or organization, we waive our right of recovery against such person or organization, but only for payments we make because of "employment loss" caused by a "wrongful employment practice offense" committed subsequent to the execution of the contract or agreement.

**10. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Common Policy Declarations written notice of the nonrenewal not less than 30 days before the end of the policy period.

If such notice is mailed, proof of mailing will be sufficient proof of such notice.

**11. Endorsements Applicable To Employment-Related Practices Liability Coverage Part**

Any endorsement to this policy that states that it modifies insurance provided under the Employment-Related Practices Liability Coverage Part will be deemed to modify the insurance provided under this Coverage Part.

**SECTION VI – EXTENDED REPORTING PERIODS**

**1.** We will provide one or more Extended Reporting Periods, as described below, if this Coverage Part is canceled or not renewed, or replaced or renewed by us with insurance that applies on other than a claims-made basis.

**2.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims or "suits" for "employment loss" caused by a "wrongful employment practice offense" committed before the end of the policy period and after the Retroactive Date.

Once in effect, Extended Reporting Periods may not be canceled.

**3.** A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for 90 days.

The Basic Extended Reporting Period does not apply to claims or "suits" that are covered under any future insurance you purchase, or that would be covered under such insurance but for the exhaustion of its applicable limit of insurance.

**4.** The Basic Extended Reporting Period does not reinstate or increase the limits of insurance.

**5.** A Supplemental Extended Reporting Period of 12 months is available, but only by an endorsement and for an extra charge. This supplemental period replaces the Basic Extended Reporting Period.

The Supplemental Extended Reporting Period will not go into effect unless we receive all of the following within 90 days after the end of the policy period and you have fulfilled all other duties, and complied with all other conditions and requirements, under this policy:

**a.** A written request from you to purchase the Supplemental Extended Reporting Period Endorsement;

**b.** Full payment of the earned premium for this policy;

**c.** Payment of the additional premium for the Supplemental Extended Reporting Period Endorsement; and

**d.** Repayment of any deductible you owe us under this policy.

We will determine the additional premium for that endorsement in accordance with our rules and rates. The additional premium will not exceed 75% of the annual premium for this Coverage Part.

This endorsement will set forth the terms, not inconsistent with this Section **VI** – Extended Reporting Periods, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims or "suits" first made or brought against any insured during such period is excess over any valid and collectible other insurance available under insurance in force after the Supplemental Extended Reporting Period starts.

**6.** The Supplemental Extended Reporting Period does not reinstate or increase the limits of insurance.

## SECTION VII – DEFINITIONS

**1.** "Bodily injury" means:

**a.** Physical harm, including sickness or disease, sustained by a person; or

**b.** Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

**2.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** All other countries or jurisdictions in the world except the "prohibited area"; or

**c.** International waters or airspace, unless the "employment loss" is caused by a "wrongful employment practice offense" committed in the course of travel or transportation to, from or within the "prohibited area";

provided that the insured's responsibility to pay damages is determined in a "suit" on the merits brought in the territory described in Paragraph **a.** above or in a settlement we agree to.

**3.** "Defense expenses":

**a.** Means any of the following fees, costs or expenses which can be directly allocated to a particular claim or "suit":

**(1)** Fees of attorneys, or other authorized representatives where permitted, for legal services, whether by outside or staff representatives; or

**(2)** Court, alternative dispute resolution and other specific items of expense, whether incurred by an outside vendor or by one of our employees, including:

**(a)** Expert testimony;

**(b)** Autopsy;

**(c)** Witnesses and summonses;

**(d)** Copies of documents such as birth and death certificates and medical treatment records;

**(e)** Arbitration fees;

**(f)** Fees or costs for surveillance or other professional investigations which are conducted as part of handling of a claim or "suit"; and

**(g)** Fees or costs for loss prevention and engineering personnel for services which are conducted as part of handling of a claim or "suit".

**b.** Does not include:

**(1)** Our expenses, including salaries, overhead and traveling expenses of our employees, except for those fees, costs or expenses described in Paragraphs **a.(1)** and

a.(2) above incurred while handling a claim or "suit"; or

(2) Fees paid to independent claims professionals or attorneys (hired to perform the function of claim investigation normally performed by claim adjusters), for developing and investigating a claim so that a determination can be made of the cause or extent of, or responsibility for, the "employment loss", including evaluation and settlement of covered claims.

4. "Described authorized person" means:

a. Any of your elected or appointed officials, "executive officers" or directors;

b. Any member of "your boards"; or

c. Your risk manager, or any leader of your legal, finance, risk management or other department that is responsible for insurance matters.

5. "Discrimination" means any violation of a person's rights with respect to:

a. That person's race, color, national origin, religion, gender, marital status, age, sexual orientation, or physical or mental disability;

b. Any other class or characteristic afforded rights under any federal, state, or local law, rule, or regulation.

6. "Employee" includes a "leased worker". "Employee" does not include a prisoner employed by any insured.

7. "Employment loss" means:

a. Employment-related harm to any of your current, former or prospective "employees";

b. Harm to any of your current, former or prospective "volunteer workers" in connection with their "volunteer worker" status; or

c. Harm to any of your current or former "independent contractors" in connection with their "independent contractor" status.

8. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

9. "Governmental administrative proceeding" means any administrative proceeding or hearing conducted by a governmental agency having the proper legal authority to conduct such proceeding or hearing.

10. "Harassment" means any unwelcome sexual advance, request for any sexual favor, or other verbal, visual or physical conduct of a sexual or non-sexual nature, when such conduct:

a. Is connected to a decision affecting a person's job performance for you or a person's performance of duties related to the conduct of your business;

b. Interferes with a person's job performance for you or a person's performance of duties related to the conduct of your business; or

c. Creates an intimidating, hostile, or offensive working environment affecting a person's job performance for you or a person's performance of duties related to the conduct of your business.

11. "Independent contractor" means any person who is not the insured's "employee" or "volunteer worker", but who performs duties related to the conduct of the insured's business because of a contract or agreement between the insured and that person for specified services.

12. "Joint powers authority" means any organization formed by two or more public entities that have agreed in a contract or agreement to jointly exercise any power common to them.

13. "Leased worker" means a person hired from a labor leasing firm under an agreement between the hirer and that firm to perform duties related to the conduct of the hirer's business.

14. "Our deductible recovery expenses" means all fees, costs and expenses incurred by us and our attorneys to recover a deductible amount in a legal proceeding brought by us against you. But if the deductible amount awarded to us is less than the full amount of the deductible payment we sought, "our deductible recovery expenses" will be a proportional amount based on the ratio of the deductible amount awarded to the full amount of the deductible payment we sought.

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Prohibited area" means any country or jurisdiction while any trade sanction, embargo or similar regulation imposed by the United States of America applies

to and prohibits the transaction of business with or within such country or jurisdiction.

**17.** "Property damage" means:

  **a.** Physical damage to tangible property of others, including all resulting loss of use of that property; or

  **b.** Loss of use of tangible property of others that is not physically damaged.

For the purposes of this insurance, data, including information, facts or programs in any electronic or other format, is not tangible property.

**18.** "Related wrongful employment practice offenses" means two or more "wrongful employment practice offenses" that have as a common connection, tie or link any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions or causes.

**19.** "Retaliatory action" includes any action directed at any person that is in response to that person's:

  **a.** Exercising any legally afforded right;

  **b.** Supporting in any way another person's exercise of any legally afforded right;

  **c.** Participating in any strike or lockout;

  **d.** Making any claim or "suit" against you or any other insured;

  **e.** Testifying against you or any other insured in any legal proceeding;

  **f.** Declining to perform any illegal or unethical act; or

  **g.** Threatened or actual reporting of any illegal operations or activities actually or allegedly conducted within your business.

**20.** "Suit" means:

  **a.** A civil proceeding that seeks damages, including:

    **(1)** An arbitration proceeding that seeks damages and to which the insured must submit or submits with our consent; and

    **(2)** Any other alternative dispute resolution proceeding that seeks damages and to which the insured submits with our consent; and

**b.** Any "governmental administrative proceeding".

**21.** "Volunteer worker" means a person, other than a prisoner, who:

  **a.** Is not acting within the scope of his or her employment as an "employee";

  **b.** Donates his or her work; and

  **c.** Is not paid a fee, salary or other compensation for that work.

**22.** "Wrongful employment practice offense" means any of the following offenses committed by or on behalf of an insured in the conduct of your business:

  **a.** "Discrimination" against any of your current, former or prospective "employees" or "volunteer workers";

  **b.** Wrongful termination of any of your current, former or prospective "employees" or "volunteer workers";

  **c.** "Harassment" of any of your current, former or prospective "employees" or "volunteer workers", or current or former "independent contractors";

  **d.** "Retaliatory action" against any or your current, former or prospective "employees" or "volunteer workers";

  **e.** Wrongful, excessive, or unfair discipline of any of your current, former or prospective "employees" or "volunteer workers";

  **f.** Wrongful hiring, supervision, or demotion of, or failure to promote, any of your current, former or prospective "employees" or "volunteer workers"; or

  **g.** Misrepresentation to, or defamation, libel, slander, disparagement or invasion of privacy of, any of your current, former or prospective "employees" or "volunteer workers".

**23.** "Your boards":

  **a.** Means any board, commission, or other governmental unit or department that:

    **(1)** Is under your jurisdiction; and

    **(2)** Is funded and operated as part of your total operating budget.

  **b.** Does not include any "joint powers authority".

CC: 000 D559 : : 001 T: 000 I: 000 :: 02 M: * 15185 *2C002 41N05221

LAW ENFORCEMENT LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

LAW ENFORCEMENT LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions,** of **Section – LAW ENFORCEMENT LIABILITY COVERAGE:**

**Fungi Or Bacteria**

**a.** "Bodily injury", "property damage" or "personal injury" which would not have occurred or taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following is added to the **DEFINITIONS** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.



PUBLIC ENTITY MANAGEMENT LIABILITY

POLICY NUMBER: ZLP-41N05221-21-PB                          ISSUE DATE: 01/21/21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – DESIGNATED BOARDS, COMMISSIONS, OR GOVERNMENTAL UNITS OR DEPARTMENTS

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART

**SCHEDULE OF DESIGNATED BOARDS, COMMISSIONS, OR GOVERNMENTAL UNITS OR DEPARTMENTS**

| Designated Board, Commission, Or Governmental Unit Or Department | Type |
|---|---|
| RIVER VALLEY TRANSIT | TRANSIT AUTHORITY |

**PROVISIONS**

1. The following is added to Exclusion **a., Boards, Commissions, Or Governmental Units Or Departments**, in Paragraph **2.**, of **SECTION I – PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE:**

   If the board, commission, or governmental unit or department shown in the Schedule Of Designated Boards, Commissions, Or Governmental Units Or Departments is:

   (1) An airport, Paragraph **a.(1)** does not apply to loss arising out of any activities or operations of such board, commission, or governmental unit or department.

   (2) An electric utility or a gas utility, Paragraph **a.(2)** does not apply to loss arising out of any activities or operations of such board, commission, or governmental unit or department.

   (3) A health care facility, Paragraph **a.(3)** does not apply to loss arising out of any activities or operations of such board, commission, or governmental unit or department, but only if such activities or operations are not the providing or failing to provide "professional health care services".

   (4) A housing authority, Paragraph **a.(4)** does not apply to loss arising out of any activities or operations of such board, commission, or governmental unit or department.

   (5) A port authority, Paragraph **a.(5)** does not apply to loss arising out of any activities or operations of such board, commission, or governmental unit or department.

   (6) A school or school district, Paragraph **a.(6)** does not apply to loss arising out of any activities or operations of such board, commission, or governmental unit or department.

   (7) A transit authority, Paragraph **a.(7)** does not apply to loss arising out of any activities or operations of such board, commission, or governmental unit or department.

2. The following is added to the first paragraph of Paragraph **4.b., Excess Insurance**, of **SECTION V – PUBLIC ENTITY MANAGEMENT LIABILITY CONDITIONS:**

   If the type of board, commission, or governmental unit or department shown in the Schedule Of Designated Boards, Commissions, Or Governmental Units Or Departments is a health care facility, this insurance for such board, commission, or governmental unit or department is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available for loss arising out of any activities or operations of such health care facility.

CC: 000 D559

00 T: 001

02 I: 001

15189 * M:

* 2 C 0 0 2 41N05221

EMPLOYMENT-RELATED PRACTICES LIABILITY

POLICY NUMBER: ZLP-41N05221-21-PB          ISSUE DATE: 01/21/21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – DESIGNATED BOARDS, COMMISSIONS, OR GOVERNMENTAL UNITS OR DEPARTMENTS

This endorsement modifies insurance provided under the following:

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART

## SCHEDULE OF DESIGNATED BOARDS, COMMISSIONS, OR GOVERNMENTAL UNITS OR DEPARTMENTS

| Designated Board, Commission, Or Governmental Unit Or Department | Type |
|---|---|
| RIVER VALLEY TRANSIT | TRANSIT AUTHORITY |

### PROVISIONS

1. The following is added to Exclusion **a., Boards, Commissions, Or Governmental Units Or Departments**, in Paragraph **2.**, of **SECTION I – EMPLOYMENT – RELATED PRACTICES LIABILITY COVERAGE:**

   If the type of board, commission, or governmental unit or department shown in the Schedule Of Designated Boards, Commissions, Or Governmental Units Or Departments is:

   (1) An airport, Paragraph **a.(1)** does not apply to "employment loss" arising out of any activities or operations of such board, commission, or governmental unit or department.

   (2) An electric utility or a gas utility, Paragraph **a.(2)** does not apply to "employment loss" arising out of any activities or operations of such board, commission, or governmental unit or department.

   (3) A health care facility, Paragraph **a.(3)** does not apply to "employment loss" arising out of any activities or operations of such board, commission, or governmental unit or department.

   (4) A housing authority, Paragraph **a.(4)** does not apply to "employment loss" arising out of any activities or operations of such board, commission, or governmental unit or department.

   (5) A port authority, Paragraph **a.(5)** does not apply to "employment loss" arising out of any activities or operations of such board, commission, or governmental unit or department.

   (6) A school or school district, Paragraph **a.(6)** does not apply to "employment loss" arising out of any activities or operations of such board, commission, or governmental unit or department.

   (7) A transit authority, Paragraph **a.(7)** does not apply to "employment loss" arising out of any activities or operations of such board, commission, or governmental unit or department.

2. The following is added to the first paragraph of Paragraph **4.b., Excess Insurance**, of **SECTION V – EMPLOYMENT – RELATED PRACTICES LIABILITY CONDITIONS:**

   If the type of board, commission, or governmental unit or department shown in the Schedule Of Designated Boards, Commissions, Or Governmental Units Or Departments is a health care facility, this insurance for such board, commission, or governmental unit or department is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available for loss arising out of any activities or operations of such health care facility.

POLICY NUMBER: ZLP-41N05221-21-PB

EMPLOYMENT-RELATED PRACTICES LIABILITY
ISSUE DATE: 01/21/21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE –
# NON-EMPLOYMENT-RELATED SEXUAL HARASSMENT

This endorsement modifies insurance provided under the following:

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART

**SCHEDULE – ADDITIONAL LAW ENFORCEMENT ACTIVITIES OR OPERATIONS –
EXCEPTION TO NON-EMPLOYMENT-RELATED SEXUAL HARASSMENT**

## PROVISIONS

1. The following is added to the definition of "wrongful employment practice offense" in the **DEFINITIONS** Section:

   "Wrongful employment practice offense" also means "non-employment-related sexual harassment" committed by or on behalf of an insured in the conduct of your business, other than "non-employment-related sexual harassment" committed by or on behalf of an insured in the conduct of "law enforcement activities or operations".

2. The following is added to the definition of "employment loss" in the **DEFINITIONS** Section:

   "Employment loss" also means harm to any "non-employee" caused by "non-employment-related sexual harassment", other than harm to any "non-employee" caused by "non-employment-related sexual harassment" arising out of "law enforcement activities or operations".

3. The following is added to the **DEFINITIONS** Section:

   "Law enforcement activities or operations":

   a. Means:

      (1) Any of the official activities or operations of your police department or sheriff agency, including any moonlighting, sec-

   ondary employment or extra-duty assignment approved by such department or agency;

      (2) Any of the official activities or operations of your juvenile detention center;

      (3) Any of the official activities of your probation officers, parole officers, animal control officers or court security officers; or

      (4) Any of the official activities or operations of any person or organization shown in the Schedule – Additional Law Enforcement Activities Or Operations – Exception To Non-Employment-Related Sexual Harassment, if a person or organization is shown in such schedule.

   b. Includes:

      (1) Ownership, maintenance or use of a premises that you own, rent or borrow in order to conduct such activities or operations;

      (2) Ownership or operation of any of your jails, penal institutions, detention centers or similar facilities;

      (3) Providing first aid; or

      (4) Providing school security.

     © 2017 The Travelers Indemnity Company. All rights reserved.

CC: 000 D559
*2C0024lN05221 15191 *M: 02 I: 000 T: 001

EMPLOYMENT-RELATED PRACTICES LIABILITY

"Non-employee" means any person other than:

**a.** Your lawfully elected or appointed official, "executive officer" or director.

**b.** Your current, former or prospective "employee".

**c.** Your current, former or prospective "volunteer worker".

**d.** Your current or former "independent contractor".

**e.** A member or "employee" of "your boards".

**f.** A legal representative of an insured that has died, or become mentally incompetent, insolvent, or bankrupt.

"Non-employment-related sexual harassment" means any unwelcome sexual advance, request for any sexual favor, or other verbal, visual, or physical conduct of a sexual nature, when such conduct is committed:

**a.** By any insured while performing duties related to the conduct of your business; and

**b.** Against any "non-employee".

 © 2017 The Travelers Indemnity Company. All rights reserved. PR T3 75 02 17

PUBLIC ENTITY MANAGEMENT LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF NETWORK AND INFORMATION SECURITY WRONGFUL ACT DEFINITION

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART

1. The following replaces the definition of "network and information security wrongful act" in the **DEFINITIONS** Section:

   "Network and information security wrongful act" means any of the following committed by or on behalf of an insured in the conduct of your business:

   a. Failure to prevent the transmission of a "computer virus".

   b. Failure to provide any "authorized user" of your web-site or "your computer or communications network" with access to such web-site or such computer or communications network.

   c. Failure to prevent unauthorized access to, or use of, data containing private or confidential information of others.

   d. Failure to provide notification of any actual or potential unauthorized access to, or use of, data containing private or confidential information of others as required by any "security breach notification law" that applies to you.

2. The following replaces the definition of "your computer or communications network" in the **DEFINITIONS** Section:

   "Your computer or communications network" means any computer or communications network that you:

   a. Rent, lease, license or borrow from others; or

   b. Own or operate.

3. The following is added to the **DEFINITIONS** Section:

   "Security breach notification law" means any law or regulation that requires an organization to notify persons that their nonpublic personal information was or may have been accessed or acquired without their authorization.

PR T4 27 01 15        © 2014 The Travelers Indemnity Company. All rights reserved.        Page 1 of 1

EMPLOYMENT—RELATED PRACTICES LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — OTHER EMPLOYMENT LAWS

This endorsement modifies insurance provided under the following:

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART

The following replaces Exclusion **k., Other Employment Laws,** in Paragraph **2.** of **SECTION I — PUBLIC ENTITY EMPLOYMENT—RELATED PRACTICES LIABILITY COVERAGE:**

**k.   Other Employment Laws**

"Employment loss" arising out of any violation of any of the duties or responsibilities required of you as an employer by any of the following laws, amendments to those laws, regulations issued pursuant to such laws, or any similar or related federal, state or local law or regulation:

**(1)** Fair Labor Standards Act, except the Equal Pay Act;

**(2)** National Labor Relations Act;

**(3)** Worker Adjustment and Retraining Notification Act;

**(4)** Consolidated Omnibus Budget Reconciliation Act of 1985;

**(5)** Occupational Safety and Health Act; or

**(6)** Employee Retirement Income Security Act of 1974.

This exclusion does not apply to "employment loss" that arises out of "retaliatory action" against any of your "employees" for the "employee's" exercising of rights afforded by such laws or regulations.

**PR T5 04 07 12**          © 2012 The Travelers Indemnity Company. All rights reserved.          Page 1 of 1

PUBLIC ENTITY MANAGEMENT LIABILITY

POLICY NUMBER: ZLP-41N05221-21-PB

ISSUE DATE: 01/21/21

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED SPECIAL EXPENSES COVERAGE – KEY EMPLOYEES

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART

## SCHEDULE – LIMITED SPECIAL EXPENSES

| Limited Special Expenses Aggregate Limit | $50,000 |
|---|---|
| Limited Special Expenses Participation Percentage | 10% |

## PROVISIONS

1. The following is added to **SECTION I – PUBLIC ENTITY MANAGEMENT LIABILTY COVERAGE:**

   **COVERAGE – LIMITED SPECIAL EXPENSES**

   1. **Insuring Agreement**

      a. We will reimburse you for "limited special expenses" to which this insurance applies that you incur to replace a "key employee". The amount we will pay for such "limited special expenses" is limited as described in Section III – Limits of Insurance.

      b. This insurance applies to "limited special expenses" only if:

         (1) The "limited special expenses" are directly attributable to a "key employee event" that happens during the "endorsement period";

         (2) The "key employee event" is first reported to us in writing during the policy period or within 90 days after the end of the policy period; and

         (3) The "limited special expenses" are incurred by you and reported to us within one year of the date on which you reported the "key employee event" to us.

   2. **Exclusions**

      This insurance does not apply to:

      a. **Boards, Commissions, Or Governmental Units Or Departments**

         "Limited special expenses" arising out of any activities or operations of the following boards, commissions, or governmental units or departments:

(1) Airports;

(2) Electric utilities or gas utilities;

(3) Health care facilities, including clinics, hospitals, nursing homes, rehabilitation facilities or blood banks;

(4) Housing authorities;

(5) Port authorities;

(6) Schools or school districts; or

(7) Transit authorities.

If an Amendment Of Coverage - Designated Boards, Commissions, Or Governmental Units Or Departments endorsement is included in this policy, this exclusion does not apply to any board, commission, or governmental unit or department shown in the Schedule Of Designated Boards, Commissions, Or Governmental Units Or Departments.

b. **Criminal, Dishonest, Fraudulent, Or Malicious Wrongful Acts Or Knowing Violations Of Rights Or Laws**

"Limited special expenses" arising out of any criminal, dishonest, fraudulent, or malicious "wrongful act", or any knowing violation of rights or laws, committed:

(1) By the insured; or

(2) With the consent or knowledge of the insured.

c. **Damages, Fines Or Penalties**

Any obligation or liability of any insured to pay damages, fines, penalties or other sums, other than "limited special expenses", arising out of a "key employee event".

PR T5 07 02 18

© 2018 The Travelers Indemnity Company.   All rights reserved.

CC: 000 D559

000 T: 001

M: 02 I: 000

15197  * M: 02 I: 000 T: 001

* 2 C O O 2 41N05221

PUBLIC ENTITY MANAGEMENT LIABILITY

**d. Nuclear Energy**

"Limited special expenses" arising out of the "hazardous properties" of "nuclear material".

**e. Strikes, Riots, Demonstrations Or Civil Commotions**

"Limited special expenses" arising out of any strike, riot, protest, demonstration, lock-out or civil commotion.

**f. War**

"Limited special expenses" arising out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** The following is added to the **SUPPLEMENTARY PAYMENTS** Section of **SECTION I – PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE:**

We will not pay any Supplementary Payment with respect to payments we make under Coverage - **Limited Special Expenses.**

**3.** The following is added to **SECTION III – LIMITS OF INSURANCE:**

Subject to Paragraph **2.** of Section III - Limits Of Insurance, the Limited Special Expenses Aggregate Limit shown in the Schedule - Limited Special Expenses is the most we will pay for the sum of all "limited special expenses" that you incur as a result of all "key employee events" that happen during the "endorsement period" under Coverage - **Limited Special Expenses.**

If no amount is shown for the Limited Special Expenses Aggregate Limit in the Schedule - Limited Special Expenses, the Limited Special Expenses Aggregate Limit is $25,000.

**4.** The following replaces **SECTION IV – DEDUCTIBLE,** but only for purposes of insurance provided under Coverage – **Limited Special Expenses:**

**Limited Special Expenses Participation Percentage**

You will pay the Limited Special Expenses Participation Percentage, shown in the Schedule - Limited Special Expenses, of the "limited special expenses" that you incur for each "key employee event" that happens during the "endorsement period". The Limited Special Expenses Aggregate Limit applies excess of this participation percentage.

**5.** The following replaces Paragraph **2., Duties In The Event Of A Wrongful Act, Claim Or Suit,** of **SECTION V – PUBLIC ENTITY MANAGEMENT LIABILTY CONDITIONS,** but only for purposes of insurance provided under Coverage - **Limited Special Expenses:**

**2. Duties In The Event Of A Key Employee Event**

**a.** You must see to it that we are notified in writing as soon as practicable of a "key employee event". To the extent possible, notice should include:

(1) How, when and where the "key employee event" happened;

(2) The name, address, and position held by the "employee" or elected official involved in the "key employee event"; and

(3) The name, address and contact information of any outside employment search firm or outside advertisement agency that you hire or intend to hire to assist you in the search for a permanent replacement of a "key employee".

**b.** In the event that you incur "limited special expenses" because of a "key employee event", a "described authorized person" must promptly send us a signed, sworn statement that contains an accounting of the "limited special expenses" and includes:

(1) The nature of the "limited special expenses" incurred by you;

(2) How, when and where such "limited special expenses" were incurred by you; and

(3) Receipts for all "limited special expenses" incurred by you.

**c.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance

 © 2018 The Travelers Indemnity Company. All rights reserved. PR T5 07 02 18

CC:: 000 D559

000 T:: 001

02 I:: 15199 * M:

* 2 C O O 2 4 IN05221

or your claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**d.** We may inspect and obtain records and other information proving the "limited special expenses". You must provide the information we request to investigate the claim. You must do this within 60 days after our request.

**e.** You must cooperate with us in the investigation or settlement of any claim for "limited special expenses".

**f.** You must assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply.

**6.** The following replaces the first and second paragraphs of Paragraph **4.b.**, **Excess Insurance**, of **SECTION V – PUBLIC ENTITY MANAGEMENT LIABILITY CONDITIONS,** but only for purposes of insurance provided under Coverage - **Limited Special Expenses**:

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured for loss we cover under Coverage - **Limited Special Expenses**.

**7.** The following replaces Paragraph **8.**, **Transfer Of Rights Of Recovery Against Others To Us**, of **SECTION V – PUBLIC ENTITY MANAGEMENT LIABILITY CONDITIONS,** but only for purposes of insurance provided under Coverage - **Limited Special Expenses**:

If you have rights to recover all or part of any payment we have made under Coverage - **Limited Special Expenses**, those rights are transferred to us. You must do nothing to impair those rights. At our request, you will bring suit or initiate an alternative dispute resolution proceeding to enforce those rights, or will transfer those rights to us and help us enforce them.

We will apply any amounts recovered in enforcing those rights of recovery in the following order:

**(1)** First, we will reimburse any person or organization (including us or you) any amount that person or organization has paid in excess of the Limited Special Expenses Aggregate Limit shown in the Schedule – **Limited Special Expenses**.

PUBLIC ENTITY MANAGEMENT LIABILITY

**(2)** Then, if there is any amount remaining, we will retain an amount equal to the amount we have paid under Coverage – **Limited Special Expenses** in connection with the loss.

**(3)** Finally, if there is any amount remaining, we will pay that amount to you, including any amounts within the participation percentage applicable to Coverage – **Limited Special Expenses**.

If any amounts are recovered in enforcing those rights of recovery, reasonable expenses incurred in enforcing such rights will be shared among all persons or organizations receiving amounts recovered. Each such person's or organization's share of those expenses will be based on the ratio of its amount recovered to the total amount recovered by all such persons or organizations in enforcing such rights. We will deduct each such person's or organization's share of those expenses from any amount we pay to such person or organization.

**8.** The following is added to the **DEFINITIONS** Section, but only for purposes of insurance provided under Coverage – **Limited Special Expenses**:

"Endorsement period" means:

**a.** The policy period shown in the Declarations of this Coverage Part; or

**b.** The period starting on the effective date shown in the policy change endorsement adding the Coverage – **Limited Special Expenses** to this policy and ending on the policy's expiration date, if such coverage has been added by endorsement during the policy period shown in the Declarations of this Coverage Part.

"Key employee" means any of the following persons who are less than 65 years of age when the "key employee event" happens:

**a.** Any of your lawfully elected officials;

**b.** Your lawfully appointed officials or "employees" who is:

**(1)** Your city manager or county manager;

**(2)** The head of your water utility or sewer utility;

**(3)** The head of your police department, sheriff agency or other public safety organization;

**(4)** The head of your fire district or department; or

**(5)** The head of your legal, finance or risk management department.

PUBLIC ENTITY MANAGEMENT LIABILITY

"Key employee event":

**a.** Means:

    **(1)** The death of a "key employee"; or

    **(2)** A medically-confirmed sickness or disability of a "key employee" that prevents such person from fulfilling the required duties of his or her current position and results in such person's resignation or retirement.

**b.** Does not include:

    **(1)** The termination of a "key employee" by you for any reason;

    **(2)** The voluntary resignation of a "key employee" for any reason, other than as a result of a sickness or disability described in Paragraph **a.(2)** above;

    **(3)** The retirement of a "key employee" for any reason, other than as a result of a sickness or disability described in Paragraph **a.(2)** above;

    **(4)** The removal of a "key employee" from office or your employment by administrative or legal process; or

    **(5)** A "key employee's" temporary leave of absence.

"Legal representation costs" means any fees, costs or expenses for legal representation or legal services.

"Limited special expenses":

**a.** Means the following reasonable expenses actually and necessarily incurred by you to permanently replace a "key employee":

    **(1)** With respect to the hiring of a permanent replacement of a "key employee", the expenses incurred:

        **(a)** To hire any outside employment search firm or outside advertisement agency; or

        **(b)** For advertising, travel, temporary lodging, meals and car rental; or

    **(2)** With respect to a "special election" held to permanently replace an elected official, the expenses incurred:

        **(a)** For polling premises, ballot machines, printing of ballots, ballot counting and public communications; or

        **(b)** To hire "temporary workers" to conduct a "special election".

**b.** Does not include any:

    **(1)** Salaries, including overtime pay, except salaries of "temporary workers" hired to conduct a "special election";

    **(2)** Employee benefits or bonuses, including sign-on benefits or bonuses;

    **(3)** "Legal representation costs";

    **(4)** Expenses incurred for a recall election;

    **(5)** Expenses incurred to comply with any law or regulation, other than as a result of a "key employee event";

    **(6)** Expenses incurred for an election recount;

    **(7)** Expenses incurred to hire a "leased worker" or a "temporary worker", except a "temporary worker" hired to conduct a "special election";

    **(8)** Expenses incurred for entertainment or recreation;

    **(9)** Relocation expenses, including moving expenses, housing expenses, and rental or lease expenses; or

    **(10)** Expenses incurred as part of a general election, regardless of whether a "key employee" position is being filled during that general election as a result of a "key employee event".

"Special election" means any election held between scheduled general elections to fill a vacant elective position with an unexpired term when an elected official is unable to fulfill his or her duties due to a "key employee event".

"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

 © 2018 The Travelers Indemnity Company. All rights reserved. **PR T5 07 02 18**

LAW ENFORCEMENT LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT REDEFINED – EXCLUSION OF VEHICLES SUBJECT TO MOTOR VEHICLE LAWS

This endorsement modifies insurance provided under the following:

LAW ENFORCEMENT LIABILITY COVERAGE FORM

## PROVISIONS

1. The following replaces Paragraph **(2)** of Exclusion **a.**, **Aircraft Or Auto**, in Paragraph **2.** of **SECTION I – LAW ENFORCEMENT LIABILITY COVERAGE:**

   (2) "Bodily injury", "property damage" or "personal injury" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify as "mobile equipment" under the definition of "mobile equipment" if such land vehicle were not:

   (i) Subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged; or

   (ii) Designated as a covered auto under your automobile liability insurance; or

   (b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment"; or

2. The following replaces the definition of "auto" in the **DEFINITIONS** Section:

   "Auto" means:

   a. A land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment;

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged, or would have been subject to such compulsory or financial responsibility law, or other motor vehicle insurance law, if you were not a public entity; or

   c. Any other land vehicle not described in Paragraph **a.** or **b.** above that is designated as a covered auto under your automobile liability insurance.

   However, "auto" does not include "mobile equipment".

3. The following replaces Paragraph **(i)** of the definition of "mobile equipment" in the **DEFINITIONS** Section:

   (i) Subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged, or would have been subject to such compulsory or financial responsibility law, or other motor vehicle insurance law, if you were not a public entity;

LAW ENFORCEMENT LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD

This endorsement modifies insurance provided under the following:

LAW ENFORCEMENT LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions,** of **SECTION I – LAW ENFORCEMENT LIABILITY COVERAGE:**

**Lead**

"Bodily injury", "property damage" or "personal injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained in or incorporated into any material or substance. This includes:

(1) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

(2) Any obligation to share damages, with or repay someone else who pay damages because of such injury or damage.

PR T5 24 07 15          © 2015 The Travelers Indemnity Company. All rights reserved.          Page 1 of 1

PUBLIC ENTITY MANAGEMENT LIABILITY
POLICY NUMBER: ZLP-41N05221-21-PB                              ISSUE DATE: 01/21/21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEFENSE EXPENSES REIMBURSEMENT FOR INJUNCTIVE RELIEF SUITS

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART (CLAIMS-MADE)

### SCHEDULE – INJUNCTIVE RELIEF DEFENSE EXPENSES REIMBURSEMENT

| | |
|---|---|
| Defense Expenses Reimbursement Limit - Aggregate | $25,000 |
| Defense Expenses Reimbursement Limit - Each Wrongful Act | $25,000 |
| Injunctive Relief Each Wrongful Act Participation Amount | 10 % |

## PROVISIONS

1. The following is added to Paragraph **1.a.** of **SECTION I – PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE:**

   We will reimburse you for reasonable "defense expenses" you incur to defend a "suit" seeking only injunctive or other non-monetary relief brought against any insured for loss to which this insurance applies. But:

   (1) The amount we will pay for such "defense expenses" is limited as described in Section **III** – Limits of Insurance; and

   (2) We will only reimburse you for such "defense expenses" after:

      (a) A final settlement has been agreed to, or a final judgment has been awarded, in the "suit" seeking only injunctive or other non-monetary relief;

      (b) The amount of such "defense expenses" you have incurred exceeds the Injunctive Relief Each Wrongful Act Participation Amount and the Defense Expenses Reimbursement Limit – Each Wrongful Act shown in the Schedule – Injunctive Relief Defense Expenses Reimbursement; or

      (c) The "suit" seeking only injunctive or other non-monetary relief is amended to seek damages for loss to which this insurance applies.

   We have the right, but not the duty, to defend the insured against any claim or "suit" seeking only injunctive or other non-monetary relief for loss to which this insurance applies. If we choose to defend the insured against such claim or "suit", we will pay all expenses we incur for such defense. Such expenses are not subject to the Injunctive Relief Each Wrongful Act Participation Amount shown in the Schedule – Injunctive Relief Defense Expenses Reimbursement and will not reduce any Defense Expenses Reimbursement Limit shown in that schedule.

2. The following replaces Paragraph **1.b.(4)** of **SECTION I – PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE,** but only for purposes of the coverage provided by this endorsement:

   (4) A claim or "suit" by a person or organization that seeks only injunctive or other non-monetary relief for loss is first made or brought against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting period we provide under Section **VI** – Extended Reporting Periods.

3. The following replaces Paragraphs **1.c.** and **d.** of **SECTION I – PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE,** but only for purposes of the coverage provided by this endorsement:

   **c.** A claim or "suit" by a person or organization that seeks only injunctive or other non-monetary relief for loss will be deemed to have been first made or brought against any insured at the earlier of the following times:

      (1) When we or any "described authorized person" first receives written notice of such claim or "suit", whichever is first; or

PR T5 26 01 16          © 2015 The Travelers Indemnity Company. All rights reserved.          Page 1 of 3

PUBLIC ENTITY MANAGEMENT LIABILITY

**(2)** When we first receive written notice from any insured of a specific "wrongful act" that caused the loss which resulted in such claim or "suit".

All claims or "suits" that seek only injunctive or other non-monetary relief because of loss caused by the same "wrongful act" or "related wrongful acts" will be deemed to have been first made or brought against any insured at the time the first of those claims or "suits" is first made or brought against any insured.

**d.** A claim or "suit" by a person or organization that seeks only injunctive or other non-monetary relief will be deemed to have been first made or brought at the time we receive written notice from any insured of a specific "wrongful act" only if that notice contains all of the following information:

**(1)** How, when and where the "wrongful act" was committed;

**(2)** The names and addresses of any persons or organizations sustaining loss, and the names and addresses of any witnesses;

**(3)** The nature and location of any loss caused by the "wrongful act"; and

**(4)** The names and addresses of each insured that committed the "wrongful act".

Notice to us that:

**(1)** All or part of one or more of any insured's acts or omissions may in the future be discovered to be a "wrongful act"; or

**(2)** Any insured may in the future receive written notice of a "wrongful act", claim or "suit";

is not notice of a specific "wrongful act".

**4.** The following is added to **Exclusion j., Injunctive Relief,** in Paragraph **2.** of **SECTION I – PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE:**

This exclusion does not apply to amounts we reimburse you for the reasonable "defense expenses" you incur to defend a "suit" seeking only injunctive or other non-monetary relief

brought against any insured.

**5.** The following is added to the **SUPPLEMENTARY PAYMENTS** Section of **SECTION I – PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE:**

For purposes of "suits" seeking only injunctive or other non-monetary relief, we will not pay any Supplementary Payments.

**6.** The following is added to **SECTION III – LIMITS OF INSURANCE:**

The Defense Expenses Reimbursement Limit – Aggregate shown in the Schedule – Injunctive Relief Defense Expenses Reimbursement is the most we will pay to reimburse you for all reasonable "defense expenses" incurred to defend all "suits" seeking only injunctive or other non-monetary relief.

Subject to the Defense Expenses Reimbursement Limit – Aggregate, the Defense Expenses Reimbursement Limit – Each Wrongful Act shown in the Schedule – Injunctive Relief Defense Expenses Reimbursement is the most we will pay to reimburse you for all reasonable "defense expenses" incurred to defend all "suits" seeking only injunctive or other non-monetary relief for loss caused by the same "wrongful act" or "related wrongful acts".

These limits of insurance apply over the Injunctive Relief Each Wrongful Act Participation Amount shown in the Schedule – Injunctive Relief Defense Expenses Reimbursement.

These limits of insurance are in addition to, and not included within, the Limits of Insurance shown in the Declarations of this Coverage Part.

**7.** **SECTION IV – DEDUCTIBLE** is deleted, but only for purposes of the coverage provided by this endorsement.

**8.** The following section is added, but only for purposes of the coverage provided by this endorsement:

**INJUNCTIVE RELIEF EACH WRONGFUL ACT PARTICIPATION AMOUNT**

The Injunctive Relief Each Wrongful Act Participation Amount shown in the Schedule – Injunctive Relief Defense Expenses Reimbursement is the amount of "defense expenses" that you incur and are responsible for paying to defend all "suits" seeking only injunctive or other

 © 2015 The Travelers Indemnity Company. All rights reserved.

PUBLIC ENTITY MANAGEMENT LIABILITY

non-monetary relief for loss caused by the same "wrongful act" or "related wrongful acts". The Defense Expenses Reimbursement Limit - Each Wrongful Act applies excess of this Injunctive Relief Each Wrongful Act Participation Amount.

If no amount is shown for the Injunctive Relief Each Wrongful Act Participation Amount in the Schedule - Injunctive Relief Defense Expenses Reimbursement, that amount will be $1,000.

The Injunctive Relief Each Wrongful Act Participation Amount cannot be paid by any amounts paid under any self-insured retention or deductible that is part of this policy. Any such self-insured retention or deductible cannot be paid by any amount of "defense expenses" that you incur and are responsible for paying to defend claims or "suits" seeking only injunctive or other non-monetary relief.

**9.** The following is added to Paragraph **2.d., Duties In The Event Of A Wrongful Act, Claim Or Suit,** of **SECTION V – PUBLIC ENTITY MANAGEMENT LIABILITY CONDITIONS:**

However, if we choose not to defend the insured against a claim or "suit" seeking only injunctive or other non-monetary relief, this paragraph does not apply to "defense expenses" that you incur to defend a claim or "suit" seeking only injunctive or other non-monetary relief brought against any insured.

**10.** The following is added to **SECTION V – PUBLIC ENTITY MANAGEMENT LIABILITY CONDITIONS,** but only for purposes of the coverage provided by this endorsement:

**Requirements To Report "Defense Expenses" For Reimbursement**

In the event that you incur "defense expenses" for a "suit" seeking only injunctive or other non-monetary relief, a "described authorized person" must send us a signed, sworn statement that contains an accounting of the "defense expenses" and includes:

(1) How, when and where such "defense expenses" were incurred by you; and

(2) Receipts, statements or other documentation for all "defense expenses" incurred by you.

The sworn statement must be sent to us as soon as practicable, but in no event more than 180 days, after:

(1) A final settlement has been agreed to, or a final judgment has been awarded, in the "suit" seeking only injunctive or other non-monetary relief; or

(2) The amount of such "defense expenses" exceeds the Injunctive Relief Each Wrongful Act Participation Amount and the Defense Expenses Reimbursement Limit - Each Wrongful Act.

**11.** The following replaces the definition of "suit" in **SECTION VII – DEFINITIONS,** but only for purposes of the coverage provided by this endorsement:

"Suit" means:

**a.** A civil proceeding that seeks damages, including:

(1) An arbitration proceeding that seeks damages and to which the insured must submit or submits with our consent; and

(2) Any other alternative dispute resolution proceeding that seeks damages and to which the insured submits with our consent; or

**b.** A civil proceeding that seeks only injunctive or other non-monetary relief.

**12.** The following is added to Paragraph **b.** of the definition of "defense expenses" in **SECTION VII – DEFINITIONS,** but only for purposes of the coverage provided by this endorsement:

"Defense expenses" also does not include:

(1) Salaries, overhead or travel of any insured; or

(2) Attorneys' fees of the person or organization making a claim or bringing a "suit" seeking only injunctive or other non-monetary relief if such fees are awarded, or paid in settlement, for such "suit".

CC: OOO D559

OOO T:  OOI

15207  *M:  O2 I:

*2 C O O 2 4 1 N05221

PUBLIC ENTITY MANAGEMENT LIABILITY

POLICY NUMBER: ZLP-41N05221-21-PB

ISSUE DATE: 01/21/21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LAW ENFORCEMENT ACTIVITIES OR OPERATIONS DEFINITION

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART

**SCHEDULE – ADDITIONAL EXCLUDED LAW ENFORCEMENT ACTIVITIES OR OPERATIONS**

**PROVISIONS**

The following replaces the definition of "law enforcement activities or operations" in the **DEFINITIONS** Section:

"Law enforcement activities or operations":

a. Means:

(1) Any of the official activities or operations of your police department or sheriff agency, including any moonlighting, secondary employment or extra-duty assignment approved by such department or agency;

(2) Any of the official activities or operations of your juvenile detention center;

(3) Any of the official activities of your probation officers, parole officers, animal control officers or court security officers; or

(4) Any of the official activities or operations of any person or organization shown in the Schedule – Additional Excluded Law Enforcement Activities Or Operations, if a person or organization is shown in such schedule.

b. Includes:

(1) Ownership, maintenance or use of a premises that you own, rent or borrow in order to conduct such activities or operations;

(2) Ownership or operation of any of your jails, penal institutions, detention centers or similar facilities;

(3) Providing first aid; or

(4) Providing school security.

PR T5 45 02 17

© 2017 The Travelers Indemnity Company. All rights reserved.

Page 1 of 1

CC: 000 D559

M: 02 I: 000 T: 001

PR T: 001

15209

* 2 C O O 2 41N05221

POLICY NUMBER: ZLP-41N05221-21-PB

LAW ENFORCEMENT LIABILITY
ISSUE DATE: 01/21/21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LAW ENFORCEMENT ACTIVITIES OR OPERATIONS

This endorsement modifies insurance provided under the following:

LAW ENFORCEMENT LIABILITY COVERAGE PART

### SCHEDULE – DESIGNATED LAW ENFORCEMENT ACTIVITIES OR OPERATIONS

## PROVISIONS

1. The following replaces the definition of "law enforcement activities or operations" in the **DEFINITIONS** Section:

   "Law enforcement activities or operations":

   **a.** Means:

   **(1)** Any of the official activities or operations of your police department or sheriff agency, including any moonlighting, secondary employment or extra-duty assignment approved by such department or agency;

   **(2)** Any of the official activities or operations of your juvenile detention center;

   **(3)** Any of the official activities of your probation officers, parole officers, animal control officers or court security officers; or

   **(4)** Any of the official activities or operations of any person or organization shown in the Schedule – Designated Law Enforcement Activities Or Operations, if a person or organization is shown in such schedule.

   **b.** Includes:

   **(1)** Ownership, maintenance or use of a premises that you own, rent or borrow in order to conduct such activities or operations;

   **(2)** Ownership or operation of any of your jails, penal institutions, detention centers or similar facilities;

   **(3)** Providing first aid; or

   **(4)** Providing school security.

2. The following exclusion is added to Paragraph **2., Exclusions** in **SECTION I – LAW ENFORCEMENT LIABILITY COVERAGE:**

   **Educator Services**

   "Bodily injury", "property damage" or "personal injury" arising out of:

   **a.** The providing or failing to provide "educator services", whether in person or electronically, to or for any juvenile offender, person detained in your juvenile detention center or person placed in any other rehabilitation program for juveniles;

   **b.** Any illegal or improper physical or non-physical contact, whether in person or electronically:

LAW ENFORCEMENT LIABILITY

(1) With a juvenile offender, person detained in your juvenile detention center or person placed in any other rehabilitation program for juveniles; and

(2) Committed by any person that is assigned to provide "educator services";

c. The creation of curriculum or educational material for any juvenile offender, person detained in your juvenile detention center or person placed in any other rehabilitation program for juveniles; or

d. Any education accreditation or certification for instruction provided by or for your juvenile detention center or any other rehabilitation program for delinquent juveniles or juvenile offenders;

including any actual or alleged violation of due process rights, or any actual or alleged discrimination, whether intentional or unintentional, based upon any characteristic, attribute, trait, condition or status that qualifies a person for protection against discrimination under federal, state or local law.

3. The following is added to the **DEFINITIONS** Section:

"Educator services":

a. Means:

(1) Education or instruction;

(2) Academic or career guidance;

(3) Discipline administered by an educator or education administrator; or

(4) School admission, enrollment or financial aid;

at any location.

b. Includes:

(1) The creation of an individual education plan, Section 504 plan or similar individualized plan of instruction;

(2) The placement, admission or enrollment in an educational program;

(3) The determination of ability to participate in any school sponsored program or extracurricular activity; or

(4) Corporal punishment, detention, suspension or expulsion administered by an educator or education administrator.

   © 2018 The Travelers Indemnity Company. All rights reserved.   PR T5 46 02 18

CC: 000 D559

00 T: 001

02 I: 000

15213 * M:

* 2 C O O 2 41N05221

EMPLOYMENT-RELATED PRACTICES LIABILITY

POLICY NUMBER: ZLP-41N05221-21-PB                    ISSUE DATE: 01/21/21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WORKPLACE VIOLENCE EXPENSES COVERAGE

This endorsement modifies insurance provided under the following:

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART

### SCHEDULE OF WORKPLACE VIOLENCE EXPENSES AND ADDITIONAL EXCLUDED LAW ENFORCEMENT ACTIVITIES OR OPERATIONS

| | | |
|---|---|---|
| Workplace Violence Expenses Limit | $250,000 | [Up to $250,000] |
| Additional Excluded Law Enforcement Activities Or Operations | | |

## PROVISIONS

1. The following is added to **SECTION I – PUBLIC ENTITY EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE:**

   ### WORKPLACE VIOLENCE EXPENSES COVERAGE

   1. **Insuring Agreement**

      a. We will reimburse you for your "workplace violence expenses" that are directly attributable to a "workplace violence event":

         (1) First commencing during the policy period; and

         (2) Reported to us as soon as practicable after you or any "described authorized person" becomes aware such "workplace violence event" has occurred, but in no event later than 90 days after the end of the policy period.

      b. The amount we will pay for your "workplace violence expenses" is limited as described in Section III – Limits Of Insurance.

   2. **Exclusions**

      This insurance does not apply to:

      a. **Boards, Commissions, Or Governmental Units Or Departments**

         "Workplace violence expenses" arising out of the activities or operations of the following boards, commissions, or governmental units or departments:

         (1) Airports;

         (2) Electric or gas utilities;

         (3) Health care facilities, including clinics, hospitals, nursing homes, rehabilitation facilities or blood banks;

         (4) Housing authorities;

         (5) Port authorities;

         (6) Schools or school districts; or

         (7) Transit authorities.

         If an Amendment Of Coverage - Designated Boards, Commissions, Or Governmental Units Or Departments endorsement is included in this Coverage Part, this exclusion does not apply to "workplace violence expenses" arising out of the activities or operations of any board, commission, or governmental unit or department shown in the Schedule Of Designated Boards, Commissions, Or Governmental Units Or Departments.

      **Law Enforcement Activities Or Operations**

      "Workplace violence expenses" arising out of "law enforcement activities or operations".

      **War**

      "Workplace violence expenses" arising out of:

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign

EMPLOYMENT-RELATED PRACTICES LIABILITY

or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

2. The following is added to the **SUPPLEMENTARY PAYMENTS** Section:

We will not pay any Supplementary Payments with respect to payments we make under **Workplace Violence Expenses Coverage.**

3. The following is added to **SECTION III – LIMITS OF INSURANCE:**

The Workplace Violence Expenses Limit shown in the Schedule Of Workplace Violence Expenses And Additional Excluded Law Enforcement Activities Or Operations is the most we will pay for the sum of all "workplace violence expenses" that you incur as a result of all "workplace violence events".

The Workplace Violence Expenses Limit shown in the Schedule Of Workplace Violence Expenses And Additional Excluded Law Enforcement Activities Or Operations is in addition to, and not included within, the Limits Of Insurance shown in the Declarations of this Coverage Part.

4. **SECTION IV – DEDUCTIBLE** or the **SELF-INSURED RETENTIONS – PUBLIC ENTITY EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE** Section, whichever applies, is deleted, but only for purposes of **Workplace Violence Expenses Coverage.**

5. The following replaces Paragraph **2., Duties In The Event Of A Wrongful Employment Practice Offense, Claim Or Suit,** of **SECTION V – PUBLIC ENTITY EMPLOYMENT-RELATED PRACTICES LIABILITY CONDITIONS,** but only for purposes of insurance provided under **Workplace Violence Expenses Coverage:**

2. **Duties In The Event Of A Workplace Violence Event**

a. You must see to it that we are notified in writing as soon as practicable of a "workplace violence event" that may result in "workplace violence expenses" covered by this insurance. To the extent possible, notice should include:

(1) How, when and where the "workplace violence event" took place; and

(2) The names and addresses of any persons or organizations sustaining injury, damage or loss, and the names and addresses of any witnesses.

b. In the event that you incur "workplace violence expenses" because of a "workplace violence event", a "described authorized person" must promptly send us a signed, sworn statement that contains an accounting of the "workplace violence expenses" and includes:

(1) The nature of the "workplace violence expenses" incurred by you;

(2) How, when and where such "workplace violence expenses" were incurred by you; and

(3) Receipts for all "workplace violence expenses" incurred by you.

c. We may inspect and obtain records and other information proving the "workplace violence expenses". You must provide the information we request to investigate the claim. You must do this within 60 days after our request.

d. You must cooperate with us in the investigation of any "workplace violence event" or the investigation or settlement of any claim for "workplace violence expenses".

e. You must assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply.

6. The following is added to Paragraph **4.b., Excess Insurance,** of **SECTION V – PUBLIC ENTITY EMPLOYMENT-RELATED PRACTICES LIABILITY CONDITIONS,** but only for purposes of insurance provided under **Workplace Violence Expenses Coverage:**

This insurance is also excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured for expenses we cover under **Workplace Violence Expenses Coverage.**

   © 2018 The Travelers Indemnity Company. All rights reserved.   PR T5 67 03 18

7. The following is added to the **DEFINITIONS** Section, but only for purposes of insurance provided under **Workplace Violence Expenses Coverage:**

"Law enforcement activities or operations":

a. Means:

(1) Any of the official activities or operations of your police department or sheriff agency, including any moonlighting, secon-Workdary employment or extra-duty assignment approved by such department or agency;

(2) Any of the official activities or operations of your juvenile detention center;

(3) Any of the official activities of your probation officers, parole officers, animal control officers or court security officers; or

(4) Any of the official activities or operations of any person or organization shown in the Schedule Of Workplace Violence Expenses And Additional Excluded Law Enforcement Activities Or Operations, if a person or organization is shown in such schedule.

b. Includes:

(1) Ownership, maintenance or use of a premises that you own, rent or borrow in order to conduct such activities or operations;

(2) Ownership or operation of any of your jails, penal institutions, detention centers or similar facilities;

(3) Providing first aid; or

(4) Providing school security.

"Premises" means the buildings, facilities or properties occupied by you in conducting your business.

"Workplace violence event" means any intentional:

a. Use of deadly force; or

b. Threat of deadly force with the display of a lethal weapon;

which occurs on or in the "premises" and which did or could result in "bodily injury" or death to an insured.

"Workplace violence expenses" means the reasonable fees, costs or expenses you incur for:

a. The services of an independent security consultant for 90 days following a "workplace violence event";

b. The services of an independent public relations consultant for 90 days following a "workplace violence event";

c. Counseling services provided to an employee by an independent consultant on the "premises" for up to 120 days following a "workplace violence event";

d. The services of any independent security guard and other reasonable costs to secure the "premises" for up to 15 days following a "workplace violence event"; or

e. The services of an independent private forensic analyst for 120 days following "workplace violence event".

 © 2018 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF JOINT POWERS AUTHORITY DEFINITION

This endorsement modifies insurance provided under the following:

PUBLIC ENTITY EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART

## PROVISIONS

1. The following is added to the definition of "joint powers authority" in the **DEFINITIONS** Section:

"Joint powers authority" also means any organization formed by a public entity and one or more "Indian tribes" that have agreed in a contract or agreement to jointly exercise any power common to them.

2. The following is added to the **DEFINITIONS** Section:

"Indian tribes" means a tribe, band, pueblo, village, or community of American Indians, or Alaska Natives, that has been recognized as an Indian tribe by the government of:

a. The United States of America; or

b. Any state in the United States of America.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA MANDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

LAW ENFORCEMENT LIABILITY COVERAGE PART
PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART

## PROVISIONS

1. The following replaces the **Cancellation** Common Policy Condition:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, will be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

      © 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**2.** The following condition is added and supersedes any other provision to the contrary:

**When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**3.** The following condition is added and supersedes any other provision to the contrary:

**Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**4.** The following condition is added and supersedes any other provision to the contrary:

**Your Right To Claim And Wrongful Act Information**

**1. When We Cancel Or Non−Renew**

Midterm cancellation or nonrenewal notices will state that, at the insured's request, we will provide claim and "wrongful act" information to the insured for the lesser of:

**a.** At least three years; or

**b.** The period of time during which we have provided coverage to the insured.

This information will contain:

**a.** Information on closed claims, including the date and description of "wrongful acts", and the amounts of payments, if any.

**b.** Information on open claims, including the date and description of "wrongful acts", and the amount of reserves, if any.

**c.** Information on notices of "wrongful acts", including the date and description of "wrongful acts" and the amount of reserves, if any.

The insured's written request for information must be made within 10 days of the insured's receipt of the midterm cancellation or nonrenewal notice. We have 30 days from the date of receipt of the insured's written request to provide the requested information.

**2. In Other Circumstances**

If we receive a written request from the first Named Insured within 60 days after the end of the policy period, we will provide the first Named Insured, within 45 days of the receipt of the request, the following information relating to this policy and any other preceding policy we have issued to you during the previous three years that provides this or similar coverage:

**a.** A list or other record of each "wrongful act", not previously reported to any other insurer, of which we were notified in accordance with the terms and conditions of this policy. We will include the date and brief description of the "wrongful act" if that information was in the notice we received.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

We compile claim and "wrongful act" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or non-renewal will be effective even if we inadvertently provide inaccurate information.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA MANDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART**

The following condition is added and supersedes any other provision to the contrary:

**Your Right To Claim And Wrongful Employment Practice Offense Information**

**1. When We Cancel Or Non-Renew**

Midterm cancellation or nonrenewal notices will state that, at the insured's request, we will provide claim and "wrongful employment practice offense" information to the insured for the lesser of:

a. At least three years; or

b. The period of time during which we have provided coverage to the insured.

This information will contain:

a. Information on closed claims, including the date and description of "wrongful employment practice offenses", and the amounts of payments, if any.

b. Information on open claims, including the date and description of "wrongful employment practice offenses", and the amount of reserves, if any.

c. Information on notices of "wrongful employment practice offenses", including the date and description of "wrongful employment practice offenses" and the amount of reserves, if any.

The insured's written request for information must be made within 10 days of the insured's receipt of the midterm cancellation or nonrenewal notice. We have 30 days from the date of receipt of the insured's written request to provide the requested information.

**2. In Other Circumstances**

If we receive a written request from the first Named Insured within 60 days after the end of the policy period, we will provide the first Named Insured, within 45 days of the receipt of the request, the following information relating to this policy and any other preceding policy we have issued to you during the previous three years that provides this or similar coverage:

a. A list or other record of each "wrongful employment practice offense", not previously reported to any other insurer, of which we were notified in accordance with the terms and conditions of this policy. We will include the date and brief description of the "wrongful employment practice offense" if that information was in the notice we received.

b. A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

We compile claim and "wrongful employment practice offense" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

© 2009 The Travelers Companies, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# EXHIBIT C

Case 4:21-cv-00705-MWB   Document 1-1   Filed 04/15/21   Page 1 of 1

JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Steven Helm

## DEFENDANTS
Derek Slaughter, Gabriel Campana and City of Williamsport

**(b)** County of Residence of First Listed Plaintiff   Lycoming
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Lycoming
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael J. Zicolello   570-321-7554
333 Market Street, Williamsport, PA 17701

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | ☐ 890 Other Statutory Actions |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | ☐ 891 Agricultural Acts |
| | | | | ☐ 893 Environmental Matters |
| | | | | ☐ 895 Freedom of Information Act |
| | | | | ☐ 896 Arbitration |
| | | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| | | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC §1983
Brief description of cause:
Free Speech/Association Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE                          DOCKET NUMBER

DATE   4/15/21
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

Case 4:21-cv-00705-MWB   Document 1   Filed 04/15/21   Page 1 of 15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN HELM,** | : | |
| **Plaintiff** | : | **No:** |
| | : | |
| **v.** | : | |
| | : | |
| **DEREK SLAUGHTER, GABRIEL** | : | |
| **CAMPANA and CITY OF** | : | |
| **WILLIAMSPORT,** | : | **JURY TRIAL DEMANDED** |
| **Defendants** | : | |

## COMPLAINT

1.    Plaintiff Steven Helm is an adult individual who resides in Lycoming County, Pennsylvania.

2.    Defendant Derek Slaughter, is an adult individual, who at times relevant to this Complaint was the Mayor of the City of Williamsport.

3.    Defendant Gabriel Campana, is an adult individual, who at times relevant to this Complaint was the Mayor of the city of Williamsport.

4.    Defendant City of Williamsport is a Municipality located at 245 W. Fourth Street, Williamsport, Lycoming County, Pennsylvania, and is a Political Subdivision of the Commonwealth of Pennsylvania duly organized as a Third Class City.

5.    Defendant City of Williamsport is vested with the management and administration of law enforcement in the City of Williamsport by and through its agency, the Williamsport Bureau of Police, in which it is further vested with the supervision, hiring, promotion of police officers and police administration employed by the City of Williamsport.

6.   This is an action to redress the deprivation under color of statute, custom or usage of the rights, privileges, and immunities secured to the Plaintiff by the Constitution of the United States and 42 U.S.C. §1983.

7.   Federal District Court has jurisdiction over the claims asserted in this Complaint pursuant to the provisions of 28 U.S.C. §1331.

8.   Venue lies in the Federal District Court for the Middle District of Pennsylvania pursuant to the provisions of 28 U.S.C. §1391.

9.   At all times relevant to this Complaint, Plaintiff Steven Helm was employed by the City of Williamsport as a Police Officer with the rank of Lieutenant.

10.   At times relevant to this Complaint, Plaintiff Steven Helm was the President of the Fraternal Order of Police (FOP) Lodge 29, serving as the highest ranking Union representative for the City of Williamsport's Police Department.

11.   On April 13, 2017,Plaintiff Steven Helm, a Lieutenant with the Williamsport Police Department filed a three (3) Count Civil Rights Complaint against Defendants which included a current and former Police Chief and the City of Williamsport at Middle District No. 17-CV-669.   (Hereinafter referred to as Helm I)

12.   Helm I asserted, among other things, a 42 U.S.C. §1983 First Amendment Freedom of Association Retaliation Claim arising from Helm's activities as the President on behalf of the Police Officer's Union.

13.   On November 16, 2018, Plaintiff Steven Helm filed a One Count Civil Rights

Complaint at No: 4-18-CV-2243 alleging a 42 U.S.C. §1983 First Amendment Freedom of Association Retaliation Claim arising from Plaintiff's activities as President on behalf of the Police Officer Union. (Hereinafter referred to as Helm II).

14.   On or about June 14, 2019, Plaintiff Steven Helm entered into a Settlement Agreement with the City of Williamsport in relation to Helm I and Helm II, which were subsequently dismissed by the parties pursuant to Stipulation.

15.   In the Fall of 2018, David Young, Williamsport Police Chief at the time, announced his intention to retire.

16.   In or about December 2018, Defendant Gabriel Campana, Mayor of the City of Williamsport at the time, began discussions with Marvin "Doc" Miller, a former Williamsport Police Officer, regarding Miller's thoughts on the open Chief position.

17. Campana sought the advice of Doc Miller on who should be the next Chief of Police.

18.   Doc Miller advised Campana that it was obvious that it should be Plaintiff Steven Helm because of his years in the department, his experience in leadership roles and the fact that he was respected in the Department.

19.   Campana indicated that he would not promote Plaintiff to Chief because Plaintiff had filed lawsuits against the City.

20.   Campana eventually offered the position of Chief to Doc Miller.

–3–

21.   Doc Miller specifically advised Mayor Campana that he wanted to have Plaintiff Steven Helm as Assistant Chief, because he was the most qualified Police Officer in the Department.

22.   Mayor Campana would not agree to allow Plaintiff Steven Helm to be promoted to Assistant Chief.

23.   In or about January 2019, Damon Hagan was appointed by Mayor Campana as the Chief of Police.

24.   Damon Hagan advocated his desires to have Plaintiff Steven Helm be appointed to the Assistant Chief position, as the most qualified Police Officer in the Department.

25.   Mayor Campana refused to allow Plaintiff Steven Helm to be promoted to Assistant Chief.

26.   In or about January 2019, Aaron LeVan was promoted by Mayor Campana to the Assistant Chief position.

27.   In or about September of 2019, Aaron LeVan stepped down as Assistant Chief.

28.   After LeVan stepped down, Chief Hagan again pushed for the promotion of Plaintiff Steven Helm to Assistant Chief, as the most qualified Police Officer in the Department.

—4—

29.   Once again, Mayor Campana refused to promote Plaintiff Steven Helm to Assistant Chief.

30.   In response to Mayor Campana's refusal to promote Steven Helm to Assistant Chief, Chief Hagan advised Campana that Plaintiff Steven Helm is the most qualified person within the Department to take the job and that Helm deserved the promotion.

31.   On or about September 10, 2019, Mark Sechrist was promoted to Assistant Chief.   Prior to being promoted Assistant Chief, Mark Sechrist had served the Department as a Patrolman since approximately 1991.

32.   On January 6, 2020, Defendant Derek Slaughter was officially sworn in and assumed the office of Mayor of Williamsport replacing Defendant Gabriel Campana.

33.   In the Fall of 2020, Chief Hagan began solicitating letters of interest and resumes to replace Mark Sechrist as Assistant Chief because Mark Sechrist was retiring.

34.   In or about September 2020, Chief Hagan announced that he intended to seek approval to promote a Captain of Detectives, which would be an additional Police Administration position.

35.   During multiple conversations and meetings between Plaintiff Steven Helm and Chief Damon Hagan, Hagan advised Helm that he was Hagan's choice to replace

-5-

Sechrist as Assistant Chief as he was the most qualified Police Officer in the Department.

36.    After it was announced that the Department was taking applications for the open position of Assistant Chief and the newly created Captain of Detectives, six (6) Police Officers applied for the positions. This included Plaintiff Lieutenant Steven Helm, Lieutenant Fred Miller, Lieutenant Marlin Smith, Lieutenant Jason Bolt, Sergeant Jody Miller and Agent Justin Snyder.

37.    With the exception of Agent Justin Snyder and Lieutenant Bolt, who had recently been promoted to Lieutenant on August 17, 2020, the candidates had extensive supervisory experience.

38.    In or about October 2020, Jason Bolt resigned from his position as Lieutenant and requested to return to the ranks as an Agent.

39.    In or about December 2020, it became known that Lieutenant Marlin Smith would be promoted to Assistant Chief and Agent Justin Snyder would be promoted as Captain of Detectives.

40.    Lieutenant Fred Miller had previously been performing supervisory duties with respect to the Detectives but was passed over for the position in favor of a less experienced candidate.

41.    Prior to the official announcement of the promotions, Plaintiff Steven Helm

–6–

was summoned to Chief Damon Hagan's conference room.   The purpose of the meeting was for Hagan to officially notify Plaintiff Steven Helm that despite Hagan's belief that Helm was the most qualified candidate for the Assistant Chief position, he was being passed over for promotion yet again.

42.   Approximately one week later, Plaintiff was called back again to meet with Chief Hagan who explained that Plaintiff Steven Helm was Chief Hagan's choice as Assistant Chief, but Defendant Mayor Slaughter would not permit the promotion.

43.   Shortly after Plaintiff's meetings with Chief Hagan, Marlin Smith announced his intention not to accept the promotion to Assistant Chief and to withdraw his name from consideration.

44.   After Marlin Smith's withdrawal, the remaining candidates for the Assistant Chief position included Plaintiff Lieutenant Steven Helm, Lieutenant Fred Miller, Sergeant Jody Miller and Agent Jason Bolt, who had resigned from his Lieutenant position.

45.   After Marlin Smith's withdrawal, only Plaintiff Steven Helm, Fred Miller, and Jody Miller met the minimum qualifications for the Assistant Chief position.   Agent Bolt did not meet the minimum qualifications for the Assistant Chief position.

46.   After Marlin Smith's withdrawal, Defendants changed the open position from Assistant Chief to Captain of the Patrol Division and altered the minimum qualifications such that Agent Bolt now met the minimum qualifications for the new

–7–

position.

47.  As indicated infra, Plaintiff Lieutenant Steven Helm had filed two (2) recent
42 U.S.C. §1983, First Amendment Freedom of Association claims against the City of
Williamsport and his Supervisors.

48.  On November 6, 2018, Lieutenant Fred Miller filed a 42 U.S.C. §1983
Freedom of Association Claim against the City of Williamsport and its Supervisors at
No. 4:18-CV-2148.

49.  Lieutenant Fred Miller entered into a Settlement Agreement with Defendant
City of Williamsport in relation to his Freedom of Association Claims on June 14, 2019.

50.  Like Plaintiff Steven Helm, Fred Miller's Freedom of Association Claim was
premised upon First Amendment Retaliation based upon Fred Miller's association with
F.O.P. Lodge 29 and his pursuit of matters on behalf of the Union.

51.  Both Plaintiff Steven Helm and Fred Miller believed the Union's status and
activities were vitally important to protect the interest of police officers and the general
public and for that reason they pursued claims against the City to preserve the Union
status and stop the City and its Supervisors from engaging in unlawful anti-union
activities.

52.  Sergeant Jody Miller filed a 42 U.S.C. §1983 First Amendment Retaliation
Claim against the City of Williamsport and his Supervisors.   His complaint was filed on

–8–

March 25, 2020, at No. 4:20-CV-00485, and was dismissed by an Opinion and Order of the Court filed December 28, 2020.

53.   Agent Jason Bolt was promoted to the position of Captain of the Patrol Division over three (3) far more experienced candidates, all of whom had filed recent 42 U.S.C. §1983 First Amendment Retaliation Claims against the City and their Supervisors.

54.   In conversations with Chief Damon Hagan regarding the failure to promote him to the Assistant Chief or Captain of the Patrol Division position, Hagan has advised Plaintiff Steven Helm that he would have liked nothing more than to pin stars on Helm's collar because Hagen felt Helm deserved it and was the most qualified person for the positions without a doubt.

55.   The Mayor of the City of Williamsport makes all final decisions as to promotions of police officers to the position of Assistant Chief and Captain.

### COUNT I

### PLAINTIFF V. DEFENDANT GABRIEL CAMPANA

### 42 U.S.C. §1983

### FIRST AMENDMENT - FREEDOM OF SPEECH AND/OR PETITION

56.   Paragraphs 1 through 55 are incorporated herein by reference as though set forth in full.

57.   The Act of suing a public employer may fall under either the Speech Clause or Petition Clause of the First Amendment because both clauses embody cognate rights.

58.   In the Fall of 2019, Police Chief Damon Hagan recommended the promotion of Plaintiff Steven Helm to the position of Assistant Chief to Defendant Campana advising Campana that Plaintiff was the most qualified member of the Department for the job and that he deserved the promotion.

59.   Defendant Campana refused the recommendation of Chief Hagan and did not promote Plaintiff Steven Helm to the position of Assistant Chief.

60.   Defendant Campana refused to appoint Plaintiff Steven Helm to the position of Assistant Chief despite Plaintiff being the most qualified person in the Department for the position.

61.   The speech contained within Plaintiff's prior lawsuits against the City and his Supervisors was a substantial or motivating factor in Defendant Campana's decision not to promote Steven Helm to the position of Chief.

62.   Defendant Campana promoted Mark Sechrist, who had not filed previous lawsuits against the City, to the position of Assistant Chief.

WHEREFORE, Plaintiff Steven Helm respectfully requests this Honorable Court to enter judgment in his favor and against Defendant Gabriel Campana for an amount in

excess of $50,000 together with attorney fees, costs, punitive damages and any such other relief as the Court deems just and appropriate.

## COUNT II

## PLAINTIFF V. DEFENDANT MAYOR DEREK SLAUGHTER

### 42 U.S.C. §1983

### FIRST AMENDMENT - FREEDOM OF SPEECH AND/OR PETITION

63.    Paragraphs 1 through 62 are incorporated herein by reference as though set forth in full.

64.    The Act of suing a public employer may fall under either the Speech Clause or Petition Clause of the First Amendment because both clauses embody cognate rights.

65.    Six Officers with the Williamsport Police Department applied for the position of Assistant Chief and/or Captain of Detectives following Chief Damon Hagan's solicitation of letters of interest and resumes in September of 2020.

66.    Of the six Officers who submitted letters of interest, Plaintiff Lieutenant Steven Helm, Lieutenant Fred Miller, and Sergeant Jody Miller had recently filed lawsuits seeking redress of violation of their constitutional rights pursuant to 42 U.S.C. §1983 against the City and their Supervisors.

67.    The other three applicants, Lieutenant Marlin Smith, recently promoted Lieutenant Jason Bolt, who requested a return to his position of Agent in October, 2020, and Agent Justin Snyder had not filed previous lawsuits against the City or their Supervisors.

68.    Agent Justin Snyder, who had no supervisory experience was promoted to the position of Captain of Detectives by Mayor Derek Slaughter.

69.    Agent Justin Snyder was promoted to the position of Captain of Detectives over the more experienced Lieutenant Fred Miller who already had been serving in a supervisory capacity over the Williamsport Police Department Detectives.

70.    Lieutenant Marlin Smith was announced as the intended next Assistant Chief.    However, Lieutenant Marlin Smith withdrew his name from consideration, and the position's minimum qualifications were subsequently changed to create the position of Captain of the Patrol Division, with lower qualifications.

71.    The remaining candidates for the position of Captain of the Patrol Division were Plaintiff Lieutenant Steven Helm, Lieutenant Fred Miller, Sergeant Jody Miller and Agent Jason Bolt.

72.    Agent Bolt did not meet the minimum qualifications for the previous position of Assistant Chief, but he did meet the qualifications for the newly created Captain of the Patrol Division.

–12–

73.   Plaintiff Lieutenant Steven Helm, Lieutenant Fred Miller and Sergeant Jody Miller all had extensive supervisory experience with the Williamsport Police Department far beyond that of Agent Jason Bolt, who had requested a return to the rank of Agent after serving as Lieutenant for a brief period of less than three (3) months.

74.   Plaintiff Steven Helm, Lieutenant Fred Miller and Sergeant Jody Miller were all passed over for the promotion to Captain of the Patrol Division by Defendant Mayor Dereck Slaughter.

75.   Defendant Mayor Derrick Slaughter appointed the far less experienced Agent Jason Bolt to the position of Captain of Patrol.

76.   The speech contained within the lawsuits filed by Plaintiff Lieutenant Steven Helm, Lieutenant Fred Miller and Sergeant Jody Miller against the City and their Supervisors to redress violations of their Constitutional rights pursuant to 42 U.S.C. §1983 was a substantial or motivating factor in the retaliatory act of refusing to consider them for the positions of Assistant Chief and/or Captain.

77.   Subsequent to Jason Bolt being promoted to Captain by Defendant Derek Slaughter, Chief Damon Hagan informed Plaintiff Steven Helm that Helm had deserved the promotion and that Helm was the most qualified person for the position without a doubt.

WHEREFORE, Plaintiff Steven Helm respectfully requests this Honorable Court to enter judgment in his favor and against Defendant Mayor Derrick Slaughter for an

−13−

amount in excess of $50,000 together with attorney fees, costs, punitive damages and any such other relief as the Court deems just and appropriate.

## COUNT III

### PLAINTIFF V. DEFENDANT CITY OF WILLIAMSPORT

### 42 U.S.C. §1983

### FIRST AMENDMENT - FREEDOM OF SPEECH AND/OR PETITION

78.   Paragraphs 1 through 77 are incorporated herein by reference as though set forth in full.

79.   The Act of suing a public employer may fall under either the Speech Clause or Petition Clause of the First Amendment because both clauses embody cognate rights.

80.   Defendant Gabriel Campana, City of Williamsport adopted a policy or custom wherein it would retaliate against Officers for the previous filing of lawsuits against the City by refusing to promote them to the positions of Assistant Chief or Captain.

81.   The speech contained within the lawsuits previously filed by Plaintiff to redress violations of his Constitutional rights pursuant to 42 U.S.C. §1983 was a substantial or motivating factor in the Defendants retaliatory acts of refusing to appoint, or even consider him for promotions for the positions of Assistant Chief and/or Captain.

WHEREFORE, Plaintiff Steven Helm respectfully requests this Honorable Court to enter judgment in his favor and against Defendant City of Williamsport for an amount in excess of $50,000 together with attorney fees, costs, and any such other relief as the Court deems just and appropriate.

**SCHEMERY ZICOLELLO**

By:___s/Michael J. Zicolello_____
Michael J. Zicolello
I.D. #65522
Attorney for Plaintiff

333 Market Street
Williamsport, PA 17701
Telephone:   (570) 321-7554
Facsimile: (570) 321-7845
Email: mike@sz-law.com

RECEIVED

2021 JUN 25   AM 8: 07

DAUPHIN COUNTY
SHERIFF'S OFFICE
HARRISBURG, PA 17101