# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN HELM,** | : | |
| **Plaintiff** | : | **No:** |
| | : | |
| **v.** | : | |
| | : | |
| **GREGORY FORESMAN, TIMOTHY** | : | |
| **MILLER and DAVID YOUNG,** | : | **JURY TRIAL DEMANDED** |
| **all in their individual and official** | : | |
| **capacity, and THE CITY OF** | : | |
| **WILLIAMSPORT** | : | |
| **Defendant** | : | |

## <u>COMPLAINT</u>

1. Plaintiff Steven Helm is an adult individual who resides at 227 West Campbell Lane, Linden, Lycoming County, Pennsylvania.

2. Defendant Gregory Foresman is an adult individual who at times relevant to this Complaint was employed as the Chief of Police for the City of Williamsport Bureau of Police with offices located at 245 West Fourth Street, Williamsport, Lycoming County, Pennsylvania.

3. Defendant Timothy Miller is an adult individual who at all times relevant to this Complaint was employed by the City of Williamsport Bureau of Police with offices located at 245 West Fourth Street, Williamsport, Lycoming County, Pennsylvania.

4. Defendant David Young is an adult individual who at times relevant to this Complaint was employed as the Chief of Police for the City of Williamsport Bureau of Police with offices located at 245 West Fourth Street, Williamsport, Lycoming County, Pennsylvania.

5. Defendant City of Williamsport is a municipality located at 245 West Fourth Street, Williamsport, Lycoming County, Pennsylvania, and is a Political Subdivision of

the Commonwealth of Pennsylvania duly organized as a Third Class City.

6.   Defendant City of Williamsport is vested with the management and administration of law enforcement in the City of Williamsport by and through its agency, the Williamsport Bureau of Police in, which is further vested the supervision and discipline of police officers employed by the City of Williamsport.

7.   This is an action to address the deprivation and the color of statute, customer usage, a right, privilege, and immunities secured to the Plaintiff by the Constitution of the United States and 42 U.S.C. §1983.

8.   Federal District Court has jurisdiction over the claims asserted in this Complaint pursuant to the provisions of 28 U.S.C. §1331.

9.   Venue lies in the Federal District Court for the Middle District of Pennsylvania pursuant to the provisions of 28 U.S.C. §1391.

10.   At all times relevant to this Complaint, Plaintiff Steven Helm was employed by the Defendant City of Williamsport as a Police Officer with the rank of Lieutenant.

11.   At all times relevant to this Complaint, Plaintiff Steven Helm was the President of the Fraternal Order of Police Lodge 29 serving as the highest ranking Union representative for the Defendant City of Williamsport's Police Department.

12.   The individual Defendants have openly expressed their antagonism towards the Local Police Union.

13.   Plaintiff Steven Helm's wife is, and has been, a public critic of the leadership of the Defendant City of Williamsport Bureau of Police.

14.   In May of 2013, Plaintiff Steven Helm provided favorable testimony at a civil rights trial for citizens who had pursued a civil rights claim against a Williamsport

Bureau of Police Captain. Plaintiff Steven Helm's testimony included unfavorable testimony as to the Defendant Police Captain's reputation in the Department, and the trial resulted in a Plaintiff's verdict against the Defendant Police Captain.

15. In or about October 2013, Defendant Captain Timothy Miller was training officers as to a proposed rental ordinance, which had not yet been passed by the City of Williamsport but for which Captain Miller was the author and main proponent. In the course of the training, Defendant Miller advised the officers that under the ordinance they possessed the legal power to evict people without due process. Plaintiff made a reasonable inquiry as to whether it was Constitutionally permissible, regardless of the text of the ordinances, to evict civilians without due process.

16. Defendant Miller was openly and vocally hostile towards Plaintiff as a result of his legitimate question as to whether officers would be violating citizens' Constitutional rights by evicting them without due process, screaming at Plaintiff, telling Plaintiff that he was a Captain while Plaintiff was a Lieutenant, and accusing Plaintiff of being insubordinate for asking a question. Defendant Miller then ordered Plaintiff into the hallway in a threatening and demeaning manner in front of police personnel. Plaintiff, however, refused to go into the hallway with Defendant Miller unless he had a union representative present because the tone and tenor of Defendant Miller made it clear that this involved possible discipline. In the face of this request, Defendant Miller relented and proceeded with the training session regarding the proposed ordinance.

17. In 2014, a Williamsport Police Officer was involved in a crash during a pursuit which resulted in the death of a civilian. As the Union President, Plaintiff Steven Helm sought to ensure that the Officer's rights were protected.

18.   It being clear that public sentiment was against the Officer who was involved in the pursuit, leadership for the City of Williamsport and its Bureau of Police made every effort to distance themselves from the Officer.  As it was Plaintiff Steven Helm's duty as Union President to protect the Officer's employment rights, he did so raising questions as to the handling of the matter by the City of Williamsport Bureau of Police leadership.

19.   In or about December 2014, Defendant Captain Timothy Miller was assigned to the position of Assistant Chief.

20.   In or about January 2015, Defendant Gregory Foresman, who was then Chief of the City of Williamsport Police Department, announced his candidacy for an open Magisterial District Judge position.

21.   Upon learning of his candidacy for Magisterial District Judge, the wife of Plaintiff Steven Helm joined a public campaign against his candidacy, which included posting information on the internet related to PFA's and discipline of Foresman, all of which was information that Defendant Foresman knew was in the possession of his ex-wife, who, with Plaintiff Helm's wife, was actively involved in the campaign against Foresman.

22.   Despite Foresman's knowledge that the internet postings related to the matters set forth above were known to his ex-wife, Defendant Foresman instructed Defendant Miller to compose an email threatening Williamsport Bureau of Police members and accusing one of them of being a "media leak".  The email specifically stated:

-4-

It has become obvious that a member of our Department is leaking information to people outside the Bureau including the media. This is a direct violation of policy and a direct act of disloyalty to the Bureau. This will not be tolerated and SHALL cease immediately. NO one is authorized to release any information to the media without authorization from command staff. An internal investigation is imminent and the source of this leak will be identified and disciplined appropriately. This investigation may result in the use of a polygraph to identify the source of this leak. This order will include any acts of disloyalty committed by talking to members of City Council and others without direct authorization of command staff. This message is per Chief foresman. (sic)

23. Upon information and belief, and based on statements made by Defendant Miller, the February 13, 2015, email was intended for Plaintiff Steven Helm because Defendant Foresman believed Plaintiff was the so-called "media leak".

24. Plaintiff Steven Helm recognized the February 13, 2015, email as a violation of Officers' right to free speech, right to free association, and a violation of both Department Policy and the Pennsylvania Labor and Relations Act. As a result, in his capacity as Union President and through Labor Counsel, Plaintiff expressed the Union's objection to the February 13, 2015 email.

25. In an email dated February 17, 2015, Defendant Miller rescinded the previous email as it was "currently written" and said that the matter of the media leak would "be readdressed in an appropriate manner ASAP."

26. On or about April 2015, the City of Williamsport Bureau of Police held an open house. During this open house, members of the public opposed to Defendant Foresman's campaign for the position of District Justice made a public display of their opposition in the vicinity of the Police Department.

27. On April 8, 2015, Defendant Foresman authored an email to members of the Police Department expressing his dissatisfaction with the public display against his

-5-

candidacy and specifically stating "this activity did not go unnoticed as everyone is aware of who the participants were."

28.  Defendant Foresman was aware that the participants included Plaintiff Steven Helm's wife.   The assertion in the email was a clear threat against Plaintiff Helm.

29.  On April 29, 2015, Defendant Miller posted to Facebook a picture he had taken while on duty of Plaintiff Steven Helm speaking with a City Councilman.  The picture included caption language which stated:

> Politics or coincidence?  Hmmm, this guy calls for my resignation and is chumming with the competition?  The alliances are beginning to take shape.

30.  On May 1, 2015, Defendant Miller made two image postings to his Facebook page indicating that he had been betrayed or "backstabbed".

31.  On May 1, 2015, Defendant Miller made a posting to his Facebook account of a picture he had taken while on duty purportedly of Plaintiff hiding from sight because Plaintiff was supposedly engaged in some sort of impermissible contact with a politician.  The caption to the picture authored by Defendant Miller stated:

> Same guy hiding behind doorway that was leaning in car window.  What makes any politician think it is OK to pull this crap blatantly in our work place.  Besides shouldn't he be pretending to be the statue of liberty or something.

32.  On May 14, 2015, Plaintiff filed, as Fraternal Order of Police Lodge 29 President, Unfair Labor Practice charges against Defendant City of Williamsport asserting that the February 13, 2015 email, February 17, 2015 email and the Facebook postings set forth above were designed to intimidate and force members of the FOP

from engaging in legitimate Union activity during an election season with various Politicians campaigning for the position of the Mayor of Williamsport. A true and correct copy of the charge of Unfair Labor Practice is appended hereto as Exhibit "A".

33. On May 19, 2015, the Pennsylvania Labor Relations Board entered a consent Order which, among other things, indicated that Defendant Miller would receive a written reprimand for his inappropriate Facebook postings. A true and correct copy of the Consent Order is Appended hereto as Exhibit "B".

34. Defendant Miller authored his supposed written reprimand required by the Consent Order.

35. In or about May 2015, Plaintiff Steven Helm made a hostile work environment complaint to the City of Williamsport regarding Defendant Miller's conduct towards him, Facebook posts, and Captain Miller's attitude towards Plaintiff Steven Helm.

36. Plaintiff expressed that he was concerned about Defendant Miller's behavior and that he feared retaliation and targeted harassment from Defendant Miller as a result of Plaintiff exercising his rights as a citizen and employee.

37. Despite the fact that Plaintiff Steven Helm's Complaint of a hostile work environment created by Defendant Miller included numerous violations of Bureau Policies and Procedures related to digital photography, use of Bureau equipment, harassment, and discrimination, no formal investigation was launched, nor was Defendant Miller formally disciplined in anyway. Instead, he was verbally counseled regarding his conduct.

-7-

38. Despite the fact that Defendant Miller was not disciplined in any way, he authored a memorandum in excess of three (3) pages to "serve as written documentation as to "perceived discipline" although the memorandum does not precisely identify to what discipline he is referring. The memorandum specifically alleges that Defendant Miller was "threatened by two high level politicians in the local government." The memorandum also volunteers that Defendant Miller is being treated by a psychologist.

39. Despite the ramblings of Defendant Miller's memo, no investigation was undertaken regarding his allegations of threats against him by local government officials and no inquiries made into his fitness for duty.

40. In or about the Summer of 2015, Defendant Miller posted a series of videos hereinafter referred to as "hater-ade" videos wherein he designated himself as a hunter of haters where he would supposedly find empty bottles of hater-ade while tracking haters. In the hater-ade videos, Defendant Miller asserted that he intended to teach a lesson to the haters.

41. On August 26, 2015, Plaintiff Lieutenant Helm was acting as watch commander of the daywatch platoon when the Lycoming County Communications Center issued tones over the Williamsport Police radio frequency that the State Police were engaged in a vehicle pursuit entering the City's east end.

42. Plaintiff Steven Helm responded to this information over the City Police radio requesting "County keep us posted, guys see if you can set up spike strips, we don't want to get involved".

43.  Plaintiff Steven Helm's assertion that we "don't want to get involved" was directed to the vehicle pursuit itself in compliance with the Williamsport Bureau of Polices' Vehicle Pursuit Policy which had been recently reviewed with officers as a result of a previous vehicle pursuit which resulted in a civilian death.  At no time did Plaintiff Steven Helm advise the Williamsport Police Officers that they were not to assist the Pennsylvania State Police if they needed assistance.

44.  At the time Plaintiff Steven Helm made his statement over the radio the State Police had not requested assistance.

45.  The Pennsylvania State Police vehicle pursuit on August 26, 2015 was completed by the Pennsylvania State Police without any assistance by the Williamsport Police Department, and without any request for assistance from the State Police.

46.  At the direction of Defendant Foresman, the Williamsport Police Department issued and conducted a many months long investigation into Plaintiff Steven Helm based on his sole statement of "we don't want to get involved".

47.  Defendant Foresman appointed Defendant Miller to conduct the investigation.

48.  On September 14, 2015, Defendant Miller authored findings accusing Plaintiff of violating the Bureau of Police Mission Statement, conduct unbecoming, violation of performance of duty, lack of competency, and failure to cooperate with other agencies.  A copy of the report is appended hereto as Exhibit "C".

49.  By memorandum dated November 16, 2015, Defendant Foresman advised Plaintiff Steven Helm that the internal investigation into his supposed misconduct on August 26, 2015, had been completed and that he was in violation of Mission

Statement; General requirements of conduct unbecoming; duty requirements-
performance of duty; competency; and cooperation with other agencies. A copy of the
memorandum is appended hereto as Exhibit "D".

50. A pre-disciplinary meeting was scheduled for Monday, November 23, 2015.

51. Defendant Gregory Foresman indicated Plaintiff would be disciplined as a
result of the incident.

52. The formal decision on the matter of discipline has been pending for more
than one year with Defendant Foresman not taking formal action before his retirement
and Defendant Young refusing to close the matter.

53. The investigation and still pending discipline, which was motivated by
retaliation against Plaintiff Helm for his union activities and the exercise of his rights of
free speech and freedom of association as well as those of his wife, is being held over
his head indefinitely.

54. In or about December 2016, Defendant Miller provided Defendant Young
with an eleven (11) page typed untitled document with numerous attachments. The
document contains several bizarre allegations and accounts including:

     a.    That Defendant Miller was threatened by a County Commissioner
          who advised Miller that he should resign unless he is able to
          distance himself from the Mayor;

     b.    That Defendant Miller had a secret after hours meeting with the
          City Council President at the Dunkin Donuts in Hughesville during
          which Defendant Miller recognized the City Council President's
          statements as threats in the same vein as the County
          Commissioner's threats against Defendant Miller;

     c.    During the supposed after hours meeting at the Dunkin Donuts in
          Hughesville with the City Council President, Defendant Miller was
          told to shut up and join the City Council President's team or the

City Council President would use the Williamsport Sun Gazette to harass Defendant Miller;

d.    That the city Council President had control over the content of the Sun Gazette.

e.    Defendant Miller asserts that a Williamsport Sun Gazette reporter confirmed for him that the City Council President had directed the Sun Gazette that Defendant Miller was "now off limits";

f.    Accusations that Plaintiff Helm was leaking confidential police information to both the Williamsport Sun Gazette and the City Council President;

g.    That Defendant Miller was called to testify before an executive session of City Council regarding hiring practices as a result of some sort of conspiracy between Plaintiff and the City Council President;

55.    The eleven (11) page untitled document authored by Miller also accused Defendant Helm's wife of obtaining police information from a shared email address with Plaintiff which resulted in the publication of confidential police information.

56.    Defendant Miller claimed to "have upwards to 400 screen shots and posts from over the last year and a half" related to Plaintiff's wife internet posts pertaining to the Williamsport Police Department."  Notably, no explanation is given why Defendant Miller was so closely following these activities and why he did not bring this matter, if it was in fact a violation of some department rule or policy, to anyone's attention prior to his authoring of the eleven (11) page document.

57.    The only investigation initiated as a result of Defendant Miller's eleven (11) page document with numerous attachments, was an investigation initiated by Defendant Young into the question of whether Plaintiff had inappropriately handled confidential police documents.

58.  There was no investigation into Defendant Miller's allegations of threats by government officials against him; nor was there any investigation into allegations related to media leaks and conspiracy between Lieutenant Helm and the City Council President, or as to whether Miller's year and a half investigation into Plaintiff and his wife was a violation of law or department policy.  Nor were any questions raised as to Defendant Miller's fitness for duty.

59.  The only investigation conducted by the Williamsport Police Department was focused on Plaintiff Steven Helm and the activities of Plaintiff's wife.

60.  In the course of the investigation, Plaintiff Steven Helm indicated that an email address he shared with his wife was used for Fraternal Order of Police business and it was possible that this was the source of the documents that were being posted on Facebook by someone who was apparently using a pseudonym.

61.  Plaintiff Helm indicated that he had been using a shared email address with his wife for over fifteen (15) years for FOP business and he had never experienced any problems in the past related to his wife accessing or publishing information sent to the address as part of his FOP duties.

62.  Plaintiff Steven Helm indicated that while he could not confirm that his wife had been publishing documents obtained from the common email address used for FOP business, being advised of the problem, he acknowledged she could have and he switched to a new exclusive email address for FOP business.

63.  There is no indication that Plaintiff was ever aware that his wife or any other person was accessing email sent to him as President of the FOP and disclosing it to others prior to February 2017.

64.  Immediately upon being notified that email sent to his email address for FOP business may have been accessed by others and published, Plaintiff Steven Helm created a new email address for all FOP business.

65.  The City of Williamsport Police Department conducted an intensive investigation of Plaintiff Steven Helm including requiring Plaintiff to undergo a polygraph examination during which Plaintiff denied disclosing any confidential Williamsport Bureau of Police information and denied that he was aware that his wife was making confidential Williamsport Police information public.

66.  The polygraph examiner indicated that the results of the polygraph did not indicate deception.

67.  On March 9, 2017, Defendant Young suspended Plaintiff Steven Helm five (5) days without pay for violations of policy PP70-1(A)(4)(a)(1)(h) and PP70-1(A)(4)(b) which provide:

(A) General Requirements

(4)  Dissemination of Information

    (a)    An officer may not Disseminate in any manner, any confidential information of the Williamsport Bureau of Police or its Officers, without proper authority.  For the purpose of this section, confidential information shall be defined as that information which:

    (1)    A person could foresee that disclosure thereof could:

    (b)    An officer may be assigned to a position or function whereby he/she will come in contact with information pertaining to the internal administration of the Bureau, development of procedures and programs, or publically sensitive matters.  Such information shall be regarded as RESTRICTED and an officer shall exercise prudent consideration prior to divulging the substances or contents of same to any authorized person.  An officer failing to exercise prudent consideration shall be subject to being assigned to some

other position or function within the Bureau.

(h)     Make known the contents of internal or criminal investigation record or report to an unauthorized Person.

68.  Defendant Young suspended Plaintiff Steven Helm five (5) days without pay despite the fact that there was no evidence or information indicating that Plaintiff Steven Helm disseminated confidential information and despite the fact that Steven Helm passed a polygraph examination which indicated that he did not disseminate or have any knowledge that his wife had disseminated confidential information of the Williamsport Bureau of Police.

69.  Defendant Young suspended Plaintiff Steven Helm for a period of five (5) days without pay despite the fact that there was no evidence, documentation or information indicating that Plaintiff Steven Helm "divulged the substance or contents" of confidential information to an unauthorized person, and despite the fact that Plaintiff Steven Helm had passed a polygraph examination indicating that he did not divulge the substance or contents of confidential information of an unauthorized person.

## COUNT I

## PLAINTIFF V. INDIVIDUAL DEFENDANTS

### 42 U.S.C. 1983

### FIRST AMENDMENT RETALIATION - FREEDOM OF ASSOCIATION

70.  Paragraphs 1 through 69 are incorporated herein by reference as though set forth in full.

71.  At all times relevant hereto, Defendants were acting Under the color of state law.

-14-

72. Plaintiff's protected activity of association included being President of the Fraternal Order of Police Lodge 29 and participating in union activities, including but not limited to negotiating agreements, filing grievances and representing the rights of individual officers.

73. Plaintiffs protected activity association included conversations, discussions and associations with political candidates.

74. Defendants have openly and repeatedly expressed hostility toward Union activities, believing the union files too many grievances and that the Union President, Plaintiff Steven Helm, is not a "team" player because he sides with the Union over the Department.

75. The Defendants' disciplinary investigations into Plaintiff Steven Helm were the direct result of the Defendants animosity toward Union activities and Plaintiff Steven Helm's perceived association with political candidates.

76. As a direct and proximate result of Defendants' unlawful retaliation against Plaintiff for his exercise of his First Amendment Right of Association, Plaintiff Steven Helm has suffered, and will suffer damages, including but not limited to lost wages, lost future pension, and emotional distress.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Defendants Gregory Foresman, Timothy Miller, and David Young for compensatory damages, punitive damages, attorney fees and costs of suit.

## COUNT II

## PLAINTIFF V. INDIVIDUAL DEFENDANTS

## 42 U.S.C. 1983

## FIRST AMENDMENT RETALIATION - FREE SPEECH

77. Paragraphs 1 through 76 are incorporated herein by reference as though set forth in full.

78. Plaintiff's wife engaged in free speech activities by campaigning against Defendant Foresman in his attempt to be elected Magisterial District Judge.

79. Plaintiff's wife also engaged in free speech activities by raising questions as to corruption in the administration of the Williamsport Police Department and advocating for reforms.

80. Plaintiff's support for his wife's exercise of her free speech rights was well known to the Defendants.

81. Defendants' retaliated against Plaintiff by subjecting him to disciplinary processes and investigations and illegally disciplining him.

82. As a direct and proximate result of Defendants unlawful retaliation against Plaintiff for the exercise of his and his wife's First Amendment Right of Free Speech, Plaintiff Steven Helm has suffered, and will suffer damages, including but not limited to lost wages, lost future pension, and emotional distress.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Defendants Gregory Foresman, Timothy Miller, and

David Young for compensatory damages, punitive damages, attorney fees and costs of suit.

## COUNT III

## PLAINTIFF V. DEFENDANT CITY OF WILLIAMSPORT

## INJUNCTIVE RELIEF

83. Paragraphs 1 through 82 are incorporated herein by reference as though set forth in full.

84. An injunction is necessary to prevent irreparable harm that cannot be adequately compensated by damages by virtue of the pending disciplinary matter against Plaintiff which Defendants refuse to close and/or act upon as well as the discipline and related investigation of alleged dissemination of confidential police information.

85. The matter of the pending discipline and the final discipline have become a part of Plaintiff's personnel file.

86. Monetary relief will not remove these matters from Plaintiff's personnel file, only injunctive relief can remove these matters from his personnel file.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter an Order for injunctive relief directing the Defendant City of Williamsport to close the pending open disciplinary investigation and rescind the 2017 disciplinary of five (5) days without pay with the removal of all references such disciplinary matters from Plaintiff's

personnel file with such other relief permitted by law as the Court may deem

appropriate.

**SCHEMERY ZICOLELLO**


By:   s/Michael J. Zicolello
        Michael J. Zicolello
        I.D. #65522
        Attorney for Plaintiff

333 Market Street
Williamsport, PA 17701
Telephone:  (570) 321-7554
Facsimile: (570) 321-7845
Email: mike@sz-law.com